# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 13

OCTOBER TERM, A.D. 2012

*January 31, 2013*

LARRY EDWARD MAGNUS,

Appellant
(Defendant),

v.                                                    S-12-0134

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*

Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel, Wyoming Public Defender Program.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; and Jeffrey Pope, Assistant Attorney General.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    A jury convicted Larry Magnus of conspiracy to obtain property by false pretenses, and the district court sentenced him to a prison term of eight to ten years. On appeal, Magnus challenges the admission of uncharged misconduct evidence and alleges prosecutorial misconduct in the State's sentencing recommendation. We affirm.

## ISSUES

[¶2]    Magnus presents the following issues on appeal:

> I.    Did the district court abuse its discretion in admitting into evidence testimony of a prior incident where Mr. Magnus had solicited money in a similar manner under W.R.E. 404(b)?
> II.    Did prosecutorial misconduct occur when the State argued undocumented allegations in a *Memorandum in Respect of Sentencing*?

## FACTS

[¶3]    In 2011, Larry Magnus and his wife, Deb Magnus, representing themselves as a charitable organization for disabled and disadvantaged children, solicited and collected donations from individuals and businesses in Gillette, Wyoming. In conducting their operation, Deb Magnus generally would make the solicitations and Larry Magnus would collect the donations.

[¶4]    Deb Magnus called numerous donors and requested a charitable donation of between twenty-five dollars and one-hundred dollars to send disabled or disadvantaged children to attend a magic show. She informed potential donors that any contribution was tax deductible as a donation to a charitable or non-profit organization. In at least one instance, Deb Magnus represented that she was affiliated with the Board of Cooperative Educational Services (BOCES), an organization that provides education services and programs for children with special needs. After Deb Magnus received a commitment from a donor, Larry Magnus would collect the donation in person. Between January and March 2011, Larry Magnus collected donations from the Gillette community totaling $12,720.00. Contrary to what the donors were told, Larry and Deb Magnus were making a profit from the sales of the children's show tickets.

[¶5]    On March 11, 2011, the State charged Larry Magnus with one count of obtaining property by false pretenses, which it later amended to a charge of one count of conspiracy to obtain property by false pretenses. On June 3, 2011, the State provided notice of its intent to present uncharged misconduct evidence pursuant to W.R.E. 404(b), identifying

1

three prior incidents in which Magnus had engaged in conduct similar to the facts underlying the conspiracy charge. The first two incidents occurred in 2001 and involved solicitations for charitable donations to junior police academies in Casper, Wyoming and Evans, Colorado. Neither Casper nor Evans had a junior police academy program associated with the city police department. The third incident occurred in 2008 in Loveland, Colorado and was a conviction for charitable fraud in relation to solicitations for a Loveland Children's Show. The State's notice identified each incident and the proposed witnesses who would testify regarding each incident, but it did not provide any biographical informational concerning the witnesses.

[¶6]   Magnus objected to the proposed uncharged misconduct evidence, and on July 12, 2011, the district court held a *Gleason* hearing. During the *Gleason* hearing, the State described the prior incidents and the purposes for which it sought to introduce the evidence, but it again did not provide biographical information concerning the witnesses. Magnus argued that the State had failed to articulate with sufficient specificity the purposes the evidence was intended to serve. After taking the matter under advisement, the court, on July 14, 2011, issued an order allowing the uncharged misconduct evidence.

[¶7]   On appeal, Magnus contests only the admission of the 2008 Loveland, Colorado conviction. Concerning admissibility of that evidence, the district court included the following findings in its order allowing the uncharged misconduct evidence:

> 3. …
>
> ….
>
> (iii)   **Loveland, Colorado**: the court finds the evidence of this incident is relevant to each of the proper purposes above-noted. Specifically, the incident, if believed by the jury, demonstrates the following with respect to the instant case: the Defendant had the intent to violate the law as charged; he had the motive to do so (self-enrichment); he had knowledge of the fraudulent nature of his activity in the instant case inasmuch as he had in the prior instance been warned off his enterprise by law enforcement; and, for the same reason, he could not claim his activity in the instant case amounted to a mistake or an accident. Furthermore, the other act or wrong – and, with respect to this particular instance, a criminal conviction for charitable fraud – evidences a course of conduct or modus operandi on the part of the Defendant.
> 4. …   In evaluating each specific alleged instance, it is sufficiently clear the Defendant committed the prior acts, wrongs or, in the case of **Loveland, Colorado**, the prior crime alleged. As well, the defense appears to be the Defendant had no criminal intent in engaging in the activities

2

charged in the Amended Felony Information. Therefore, his state of mind in engaging in these activities is squarely at issue. Certainly other evidence is available with respect to the charge contained in the Amended Felony Information – that is, evidence surrounding the presently charged acts – and the court weighs this fact in its decision. However, the evidence of other acts, wrongs or crimes is not unnecessarily cumulative. It establishes a pattern of fraudulent activity on the part of the Defendant utilizing a repeated modus operandi.

....

6. The prior instances of conduct are no more reprehensible than the present alleged instance of conduct. Therefore, the jury will not be tempted to punish the Defendant for the prior acts. In respect to the **Loveland, Colorado** act, the Defendant has already been punished by conviction of charitable fraud.

7. The alleged victims of the prior acts were no more vulnerable or sympathetic than the alleged victims in the instant case – in all instances the alleged victims were members of the general public. Therefore, the jury will not be tempted to punish the Defendant on account of any special vulnerability of the alleged victims in the previous instances.

....

10. The prior alleged instances of conduct on the part of the Defendant are more relevant to the proper purposes announced (intent, motive, knowledge, course of conduct, modus operandi, absence of mistake or accident) than they are probative of bad character. The Defendant, according to these prior acts, had an especial proclivity for charitable fraud and, in this regard, his modus operandi and pattern were idiosyncratic and strong.

[¶8] On September 20, 2011, the jury trial began on the charge against Magnus. During the trial, the State presented the testimony of thirty-four victims from the Gillette community concerning the solicitations and donations related to the charged crime. The State also presented uncharged misconduct evidence on two of the three prior incidents identified in its pretrial notice, the Casper junior police academy solicitations and the Loveland children's show solicitations. Before each witness' testimony concerning an incident of uncharged misconduct evidence, the district court read the jury a cautionary instruction defining the purposes for which the jury was permitted to consider the evidence. The instruction was repeated during the State's closing argument.

3

[¶9]   With respect to the Loveland incident, the State presented the testimony of a Loveland police detective who investigated the incident and the testimony of an elderly individual from whom Magnus had attempted to collect a donation for the Loveland show.  Magnus did not object to the elderly Loveland witness as unfairly sympathetic either before trial or when she was called to testify.

[¶10]  On September 22, 2011, the jury returned a guilty verdict, and on October 14, 2011, the district court entered a Judgment Upon Jury Verdict.  Before Magnus' sentencing hearing, the State filed a Memorandum in Respect of Sentencing.  In its memorandum, the State recommended the maximum sentence of eight to ten years of imprisonment.

> Due to the volume of victims, the effect of his actions on the victims, the amount of money collected in this case, and the Defendant's history of criminal activity, the State respectfully argues that the Defendant be sentenced to a term of imprisonment for not less than eight (8) years nor more than ten (10) years, to be served consecutively to any term imposed by the court in the pending probation revocation proceeding in Case No. 2008CR826, Larimer County, Colorado.  Upon release, the Defendant should also be ordered to pay restitution to the victims in the amount of $12,720.00.

[¶11]  In support of its recommendation, the State attached a spreadsheet identifying over three hundred Gillette businesses and individuals from whom Magnus solicited and collected donations.  The State also urged the district court to consider the uncharged misconduct, including the two incidents for which evidence was presented at trial: the Casper junior police academy incident, citing the testimony of a former Casper police detective; and the Loveland incident, citing the testimony of the Loveland detective.  Also included in the uncharged misconduct that the State argued should be considered in sentencing were allegations that Magnus had engaged in similar uncharged misconduct in Casper and Cheyenne.  The State's memorandum cited to a "review of the deposit tickets and copies of negotiated checks obtained by the Gillette Police Department for Bank of the West Account No. 803012962, … d/b/a The Children's Show," which showed deposits of approximately $143,000.00 worth of checks made out to the Cheyenne Children's Show and the Casper Children's Show.

[¶12]  On November 15, 2011, Magnus filed an Objection to Presentence Investigation Report and Motion to Strike Portions of the Report.  Magnus objected to the tone of the report as lacking neutrality and siding with the State's sentencing recommendation, and he objected to the attachment of the State's memorandum to the presentence investigation (PSI) report.  In objecting to the PSI report, Magnus challenged the State's support for its

victim restitution claim, but he did not otherwise object to the substance of the State's sentencing memorandum. Nor did Magnus file a separate objection or response to the State's sentencing memorandum.

[¶13] On February 14, 2012, the district court held a sentencing hearing. During that hearing, counsel for Magnus reiterated his objection to the tone of the PSI report, objected to the attachment of the State's memorandum to the report, and objected to the State's restitution claim. Magnus did not otherwise respond to the State's sentencing memorandum or object to the contents or accuracy of that document.

[¶14] In response to Magnus' objection, the court excised the State's sentencing memorandum from the PSI report. After consideration of the PSI report and hearing from the State and Magnus, the court sentenced Magnus to a term of imprisonment of eight to ten years. Magnus timely filed his Notice of Appeal.

## DISCUSSION

### A. Admission of Rule 404(b) Uncharged Misconduct Evidence

[¶15] The first argument Magnus presents on appeal is a challenge to the district court's admission of uncharged misconduct evidence under W.R.E. 404(b). This Court reviews a decision to admit uncharged misconduct evidence as follows:

> We review claims of error concerning the improper admission of W.R.E. 404(b) evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006). A trial court abuses its discretion when it could not have reasonably concluded as it did. *Id.* In this context, "reasonably" means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious. *Id.*
>
> *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206–07 (Wyo. 2007). Even if we determine that a district court abused its discretion in improperly allowing admission of uncharged misconduct evidence, and thus the evidence was admitted in error, we must also determine whether the error was prejudicial. *Solis v. State*, 981 P.2d 34, 36 (Wyo. 1999). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010).

*Rolle v. State*, 2010 WY 100, ¶ 9, 236 P.3d 259, 264 (Wyo. 2010).

[¶16] We have acknowledged the difficulties presented by uncharged misconduct evidence and have adopted a four-part test to guard against its misuse:

> [B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Vigil*, 926 P.2d at 357 (quoting *United States v. Herndon*, 982 F.2d 1411, 1414 (10th Cir. 1992)). We do not apply this test on appeal; rather, it is intended to be conducted by the trial court. *Beintema v. State*, 936 P.2d 1221, 1224 (Wyo. 1997). Our role is to determine whether admission of the evidence was error. *Id.*; *Spencer v. State*, 925 P.2d 994, 997 (Wyo. 1996).

*Baldes v. State*, 2012 WY 67, ¶ 16, 276 P.3d 386, 390 (Wyo. 2012) (quoting *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002)).

[¶17] On appeal, Magnus does not argue that the district court erred in admitting the uncharged misconduct evidence relating to the Casper junior police academy incident. Nor does he contest the admission of the Loveland detective's testimony concerning the Loveland crime. Magnus limits his challenge to the testimony of the elderly witness who was a targeted victim of Magnus' Loveland crime, and his sole contention with regard to the witness is that the evidence's probative value was outweighed by its potential for unfair prejudice because the elderly witness was "the epitome of a sympathetic witness."

[¶18] As evidence of the sympathetic nature of the witness, Magnus points to the witness' age, her poor memory and confusion, her residence in an assisted living complex, and her very tight financial budget. Magnus suggests that these characteristics made the witness unfairly sympathetic and contends that the district court's comparison of the victims of the charged crime and uncharged misconduct was superficial and inadequate. Magnus summarizes his argument as:

> The evidence presented by the State demonstrated that Mr. Magnus was trying to defraud a little old lady of her last ten dollars at the end of the month. It is the prejudicial effect of

6

that testimony that needed to be evaluated. The court failed to weigh the prejudicial nature of this witness, when it conducted it[s] analysis. The mere fact that in the most general sense all of the victims share the quality that they were "members of the general public," as the district court found in reaching its decision, does not satisfy the proper inquiry. Cf. *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (trial judge did not abuse discretion in excluding testimony of highly sympathetic child witness).

[¶19] We note that Magnus has raised his concern regarding the relative sympathy of the victims for the first time on appeal. He did not raise his concerns in his objection to the uncharged misconduct evidence, during the *Gleason* hearing, in an objection to the district court's written order that contained the comparative victim analyses, or when the witness testified at trial. While we recognize that the district court was not afforded an opportunity to address in the first instance this newly raised concern regarding the State's uncharged misconduct evidence, we have not required that as a condition to appeal a Rule 404(b) objection.

> In *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002), we said the standard for reviewing rulings under W.R.E. 404(b) generally is abuse of discretion but where the defense fails to object to such evidence at trial the plain error standard applies. More recently, however, we said:
>> [W]here a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence. The State must then respond with sufficient information to meet the balance of the *Huddleston* [*v. U.S.*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)] test adopted in *Vigil* [*v. State*, 926 P.2d 351 (Wyo. 1996)] [i.e., the State must justify the evidence as proper under one of the exceptions to character evidence articulated in W.R.E. 404(b) or the general expansion of that rule and demonstrate that the evidence is relevant for the proposed purpose].
> *Williams v. State*, 2004 WY 117, ¶ 12, 99 P.3d 432, 439 (Wyo. 2004). Thus, in accord with *Williams,* a defendant is not required to object to uncharged misconduct evidence at trial if he has filed a pretrial demand for notice of intent to introduce Rule 404(b) evidence. The rationale for this rule is that "rulings on uncharged misconduct evidence are too

important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room." *Id.,* at 440.

*Dettloff v. State*, 2007 WY 29, ¶ 34, 152 P.3d 376, 385-86 (Wyo. 2007).

[¶20] Magnus did request notice of the State's intention to present uncharged misconduct evidence, and the State provided that notice. The district court then ordered the evidence admissible following a *Gleason* hearing. We thus conclude that Magnus preserved his objection and address his argument that the district court abused its discretion when it permitted the elderly witness to testify regarding the Loveland crime.

[¶21] Based on our review of the record, we must disagree with Magnus that the witness at issue presented as a highly sympathetic witness. The witness had difficulty recalling dates and names, but she rejected defense counsel's suggestion that she resided in an assisted living apartment, describing herself as "very independent." And the witness provided unwavering testimony concerning her interactions with Magnus and her participation in an undercover operation with the Loveland police:

> Q.      And when did you meet Mr. Larry Magnus?
> A.      Well, I had a call one week from a lady telling me that they were collecting money for children. And I said what was this for. And it was for taking underprivileged children to places and concerts and things that they wouldn't usually get to go to. And I had worked with the City of Loveland a lot, and in fact, I started the children's daycare. And I was suspicious that this wasn't a legitimate cause. I worked so much with them.
> ....
> Q.      And then could you explain to the jury what happened next?
> A.      Yes. I was brought up that if a person could look you straight in the eyes and he was talking to you, you could rely on their word. I am the older generation, when we were taught things at home that counted. And I always remembered that. The next week after the first phone call, I had the call again. And I made an appointment for him to come out and wanted to see if he could look me in the eye straight and talk. I told him I would have $10 –
> Q.      Okay.
> A.      -- for the children's benefit.
> Q.      Okay, and so what happened next?

8

A.     He came, and he was punctual. And I had the $10. And he couldn't look me in the eyes, kept looking down, on the side from the waist down.

....

Q.     And so you had your $10 and the man arrives and what happens?

A.     No, I didn't give it to him. I had the $10 in my hand. This was the last of the month. I said, you know what this is the last of the month. It was a weekend coming up. I think I will wait till I get my check next week and maybe I can give you some more money because I was pretty sure that this was a scam. So he left without the money.

....

Q.     Okay. And so what happened next?

A.     Well, the two police officers came early, hid their cars, went in the office. And he didn't come at 4:15, and it kept on and on. And finally at 5:30, I called him, and he said that he had been to the little town below for a pickup, and he had two more places to go on the west side. I asked him where he was at. And he was 20 minutes away in the northern part of town, and I told him my time was as good as the rest of them, I had been waiting that long and I wanted to leave that evening, and he was to either come then or forget it, to that effect.

Q.     So then what happened?

A.     So he did come in about 20 minutes, like I said, took him close to that. So I met him there at the office door, and there are outside doors. I met him in between with the office door half wide open so they could hear everything that was said. I gave him the money, and he handed me a receipt for $10. And I said, no, I gave you $50 and I want that to show what I gave.

Q.     How did he respond?

A.     He did correct it reluctantly, and so then that was the end of it. And I spoke loud enough that they could hear me inside the office.

Q.     So the officer could hear you, okay.

A.     And they let him get outside and then they nailed him and handcuffed him, and he had a stack of receipts. Can I say all this?

[¶22]  The above testimony does not strike this Court as the testimony of a person of feeble mind or spirit. Because the record does not reflect the testimony of a particularly

9

vulnerable witness, we find no abuse of discretion in the district court's finding that the victims of the uncharged misconduct were no more vulnerable or sympathetic than those of the charged crime. Additionally, Magnus has not shown that he was unfairly prejudiced by the substance of the elderly witness' testimony. She was not the only witness who testified to the Loveland crime, and Magnus has not appealed the admission of the Loveland's detective's testimony concerning the same criminal conduct. Nor has Magnus challenged the district court's findings that the Loveland crime itself was no more reprehensible than the charged crime and that the jury was unlikely to punish Magnus for the Loveland crime because Colorado had already convicted and punished him. Based on this record, we can find no abuse of discretion in the district court's determination that the probative value of the Loveland evidence, including the testimony of the elderly witness, was not outweighed by its potential for unfair prejudice.

## B.    Prosecutorial Misconduct in Sentencing

[¶23]  In his second issue, Magnus contends that the State committed prosecutorial misconduct in its sentencing memorandum to the district court, resulting in the imposition of a longer sentence. During the sentencing hearing, Magnus did not object to the sentencing memorandum or the court's sentencing procedure, and our review is therefore confined to a search for plain error. *Sandoval v. State*, 2009 WY 121, ¶ 6, 217 P.3d 393, 395 (Wyo. 2009). Our plain error analysis requires that an appellant "establish, by reference to the record, a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way and that the violation adversely affected a substantial right resulting in material prejudice." *Joreski v. State*, 2012 WY 143, ¶ 11, 288 P.3d 413, 416 (Wyo. 2012) (quoting *Jealous v. State*, 2011 WY 171, ¶ 11, 267 P.3d 1101, 1104 (Wyo.2011)). Material prejudice means a reasonable probability exists that the result would have been more favorable in the absence of the alleged error. *Id.*

[¶24]  Because this issue presents a challenge to the prosecutor's conduct and the court's sentencing decision, we are also guided by the following:

> We review a district court's sentencing decisions for abuse of discretion. *Roeschlein v. State*, 2007 WY 156, ¶ 17, 168 P.3d 468, 473 (Wyo. 2007). A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Id.* An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. *Id.* The party who is appealing bears the burden to establish that an error was prejudicial. *Id.*

10

*Joreski*, ¶ 10, 288 P.3d at 416 (quoting *Noller v. State*, 2010 WY 30, ¶ 7, 226 P.3d 867, 869 (Wyo. 2010)).

[¶25]  Our precedent illustrates that a sentencing court may consider a wide range of factors about the defendant and the crime when imposing sentence.  *Joreski*, ¶ 11, 288 P.3d at 416.

> They are free, in the exercise of their sentencing discretion, to consider victim impact statements, PSIs and other factors relating to the defendant and his crimes in imposing an appropriate sentence within the statutory range. *Garcia v. State*, 2007 WY 48, ¶ 10, 153 P.3d 941, 944 (Wyo. 2007), citing *Smith v. State*, 2005 WY 113, ¶ 37, 119 P.3d 411, 422 (Wyo. 2005). Trial courts are permitted to consider a defendant's character when exercising their discretion to impose sentence. *Doherty*, ¶ 35, 131 P.3d at 974. In evaluating character, the trial court may consider a broad range of reports and information. *Gorseth v. State*, 2006 WY 109, ¶ 15, 141 P.3d 698, 703 (Wyo. 2006). A defendant's cooperation with authorities and remorse for his actions are appropriate factors to be considered when imposing sentence. *Dodge v. State*, 951 P.2d 383, 386 (Wyo. 1997). A sentencing recommendation contained in a PSI is one of the factors that a court may properly consider in determining the appropriate sentence to impose. *Duke v. State*, 2009 WY 74, ¶ 15, 209 P.3d 563, 569 (Wyo. 2009).

*Joreski*, ¶ 13, 288 P.3d at 416-17 (quoting *Noller*, ¶ 13, 226 P.3d at 871); *see also Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo. 2004) (quoting *Mehring v. State*, 860 P.2d 1101, 1117 (Wyo. 1993) ("Evidence of prior criminal activity is 'highly relevant to the sentencing decision' and may be considered by the sentencing court despite the fact that no prosecution or conviction may have resulted.")).

[¶26]  Due process requires, however, that a court consider only accurate information in imposing sentence.  *Sandoval*, ¶ 8, 217 P.3d at 395; *Manes v. State*, ¶ 9, 92 P.3d at 292.

> "[A] sentencing decision cannot be based upon unreliable information, undocumented information, or inaccurate information." *Hubbard v. State*, 2008 WY 12, ¶ 24, 175 P.3d 625, 630 (Wyo. 2008). If a prosecutor brings undocumented or inaccurate allegations to the district court's attention during sentencing, he engages in misconduct. *Id.* Nevertheless, a showing that inaccurate information was

presented to the court will not necessarily justify a reversal; "the defendant must demonstrate that the trial court relied upon the statements in sentencing to prevail." *Manes*, ¶ 9, 92 P.3d at 292. *See also*, *Hubbard*, ¶ 19, 175 P.3d at 629.

*Sandoval*, ¶ 8, 217 P.3d at 395-96.

[¶27] In its sentencing memorandum, the State alleged that Magnus engaged in the same criminal conduct in Casper and in Cheyenne, *i.e.*, misrepresenting himself as a charitable organization and soliciting donations for children's shows in those communities. Magnus contends that these allegations are undocumented and constitute prosecutorial misconduct because no evidence of these allegations was presented at trial and Magnus was never charged with these crimes. We disagree.

[¶28] This Court has held that a trial court, in the exercise of its sentencing discretion, may:

go beyond the record to consider the defendant's past conduct and activities including evidence of crimes for which charges were filed but no conviction resulted. The scope of the inquiry may include the factual basis of dismissed charges "as well as hearsay reports implicating the defendant in other crimes if such reports are deemed sufficiently reliable."

*Capellen v. State*, 2007 WY 107, ¶ 16, 161 P.3d 1076, 1080 (Wyo. 2007) (quoting *Swingholm v. State*, 910 P.2d 1334, 1339 (Wyo.1996)).

[¶29] The State's allegations concerning Magnus' activities in Casper and Cheyenne were based on reliable documentation. The State identified the bank account from which it obtained the information, and it identified the time periods of deposit tickets and negotiated checks it reviewed in forming its allegations that Magnus engaged in the same activities in these other communities. The State's memorandum provided sufficiently reliable information concerning the allegations, and we thus find no violation of a clear and unequivocal rule of law.

[¶30] We likewise reject Magnus' assertion that he did not have an opportunity to respond to the allegations in the State's sentencing memorandum. The State filed its sentencing memorandum on October 6, 2011, and the court held its sentencing hearing on February 14, 2012. Magnus had ample notice of the State's allegations, access to the account records—since they were his records, and an opportunity to respond either in writing before the sentencing hearing or during the sentencing hearing. *See Capellen*, ¶ 19, 161 P.3d at 1081 ("Mr. Capellen was afforded a full opportunity at sentencing to dispute all of the information he challenges in this appeal. Accordingly, he was not deprived of a fair sentencing.").

[¶31]   Finally, even if we were to conclude that the information in the State's sentencing memorandum was undocumented or unreliable, the record contains no indication that the district court relied on those allegations in making its sentencing decision.  Instead, the record shows that the court was more concerned with Magnus' Colorado felony conviction, his commission of the present crime while on probation for the Colorado crime, and what the court perceived as his failure to acknowledge his mistakes.

> And the court, like counsel, has plenty of experience in sentencing proceedings.  And it is not surprising to see a sentencing recommendation for incarceration, as is present here from the PSI author, when we have an individual who was on felony probation for a like offense.
> Now granted it might not be the identical offense, and you made something of that, I think in your objection here, did you not?  It is not an identical offense, but it is a like offense and that is how I would take the submittal from the presentence author.  And under the terms of his probation there, I think, he wasn't supposed to be out of state.  Certainly wasn't supposed to be engaging in this kind of behavior again.  And so with a prior felony behind him for a like kind of activity, it is just not real surprising to see a recommendation for incarceration.
> So all of that having been taken into account, the court finds the defendant is not a fit and proper candidate for probation.
>                                    ....
> Mr. Magnus, this isn't the first time you have been through an experience like this.  And I realize just from your comments that you don't see your behavior as others seem to have seen it.  And that in and of itself requires some analysis by you.  Just that one issue right there, why it is you see the world differently, apparently, than everybody else does.  And I think maybe if you straighten that out, maybe that will result in you not being back in court on these kinds of charges again.

[¶32]   The district court entered a sentence permitted by law, and Magnus has not shown plain error in the sentencing proceedings.

## CONCLUSION

[¶33] We find no abuse of discretion in the district court's admission of uncharged misconduct evidence and no plain error in the sentencing proceedings. Affirmed.