# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 125

OCTOBER TERM, A.D. 2013

October 10, 2013

JERELE CRAIG COTHREN, JR.,

Appellant
(Defendant),

v.

S-12-0270

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable David B. Park, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Christyne Martens, Assistant Attorney General. Argument by Ms. Martens.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]  Appellant Jerele Cothren returns to this Court to challenge an amended judgment and sentence issued by the District Court for the Seventh Judicial District following remand for resentencing.  We find that the sentence imposed on remand is still illegal for reasons discussed below, and reverse and remand for entry of an amended sentence.

## ISSUES

[¶2]  Cothren raises four issues, which we restate as follows:

> 1.  Did the district court abuse its discretion in refusing to allow Cothren to withdraw his guilty plea?
>
> 2.  Did the district court err when it declined to retroactively reject the plea agreement it had accepted two years earlier, and to sentence Cothren anew while holding the State to its agreement to dismiss thirteen of fourteen charges?
>
> 3.  Did the district court err by attempting to cure the illegality of Cothren's sentence without adjusting its length on the basis of his efforts to reform himself while in prison?
>
> 4.  Did the district court improperly grant Cothren credit for time served or otherwise impose an illegal sentence?

## FACTS

[¶3]  As we noted in Cothren's first appeal, *Cothren v. State*, 2012 WY 102, 281 P.3d 352 (Wyo. 2012) (*Cothren I*), the sentence in this case is one of four imposed for unrelated crimes by three district courts between 2007 and 2010.  In 2007, he was sentenced to two to four years of incarceration on a conviction for larceny by bailee in Natrona County.  The Natrona County district court suspended Cothren's term of incarceration in favor of three years of supervised probation.  *Id.* at ¶ 3, 281 P.3d at 353-54.  In early 2009, the district court in Sheridan County sentenced him to seven concurrent prison terms of five to eight years for six counts of forgery and one count of identity theft.  *Id.*

[¶4]  Later that year, Cothren was sentenced to a two-to-five-year term of imprisonment for livestock rustling in Platte County, which the district court there suspended in favor of a term of five years of supervised probation, which was to begin after Cothren served the Sheridan County sentence.  In May of 2010, his probation in the first Natrona County case was revoked and the district court imposed the term of two to four years of

1

imprisonment which had been suspended. *Id.* As discussed below, although the record is not clear, the parties agree that the sentence on the first Natrona County case was to run consecutively to the Sheridan County case after probation was revoked.

[¶5]    On August 6, 2010, the Natrona County District Court sentenced Cothren to a term of eight to ten years imprisonment for forgery. The court ordered that sentence to run concurrently with the Sheridan County sentence and consecutively to the sentence in the first Natrona County case and the Platte County sentence. *Id*.

[¶6]    The judgment and sentence in Cothren's present case, the second Natrona County conviction, was filed on May 3, 2011. On June 20, 2011, Cothren filed a motion asking the district court to correct his sentence, which he claimed was illegal. In his motion, and at the hearing on that motion, he suggested that the sentences in both the first Natrona County case and the Platte County case were to run consecutively to the Sheridan County sentence. He argued that the second Natrona County sentence could not simultaneously be consecutive to the first Natrona County sentence and concurrent with the Sheridan County sentence, and that the second Natrona County sentence could not simultaneously be concurrent with the imposed Sheridan County sentence and consecutive to the probationary period of the Platte County sentence. *Id.* at ¶ 5, 281 P.3d at 354. Cothren abandoned the first argument and proceeded solely on the second in his appeal from the denial of that motion, and this Court limited its consideration to that issue in *Cothren I*.

[¶7]    We remanded the case to the district court to correct a sentence that we held to be illegal in two respects. It was impossible to serve that sentence both concurrently with the Sheridan County sentence and consecutively to the Platte County probation that was consecutive to the Sheridan County sentence, and it was unlawful to have Cothren serve his second Natrona County sentence in two installments separated by the Platte County probation. *Id.* at ¶ 14, 281 P.3d at 357.

[¶8]    Cothren moved to withdraw his guilty plea, which would effectively negate what the parties regard as a plea based on a joint sentencing recommendation under W.R.Cr.P. 11(e)(1)(B). The plea agreement resulted in the dismissal of thirteen additional felony forgery counts. However, Cothren's counsel asked the district court to treat his existing guilty plea to one count of forgery as a "cold plea," or a plea made without a plea agreement. This might arguably allow Cothren to keep the benefit of the plea agreement (the dismissal of thirteen felony charges), while permitting him to argue for a lesser sentence on the one remaining count.

[¶9]    Cothren also requested an updated presentence investigation report which he anticipated would reflect successful efforts at rehabilitation while in prison. The district court declined to order an updated presentence investigation, but it allowed Cothren to testify as to his rehabilitation at the resentencing hearing. It also allowed Cothren to call his sister, the victim of the forgery, to testify in favor of probation.

2

[¶10]  The record reflects that the district judge in Natrona County was advised by the district judge in Platte County that he had discharged Cothren from his Platte County probation before the resentencing hearing.[1]  Cothren also testified that he had been paroled from his Sheridan County sentence to serve the incarceration required by his first Natrona County sentence.

[¶11]  The district court declined to allow Cothren to withdraw his guilty plea, noting that it could not rationally hold the State to the dismissal of thirteen felonies while leaving him free to argue for a lesser sentence.  It expressed its appreciation for Cothren's efforts at rehabilitation, but imposed a sentence of not less than eight nor more than ten years of incarceration, which was the same term of confinement as in the original sentence.  The sentence was to run concurrently with the Sheridan County sentence and consecutively to the first Natrona County conviction, as had been the case under the first sentence.  The court awarded Cothren 680 days of credit against his sentence for a period commencing at the time it imposed the original sentence in this case on August 6, 2010. This appeal was timely perfected.

## DISCUSSION

### Denial of Motion to Withdraw Guilty Plea

[¶12]  The standard that district courts must apply when ruling on motions to withdraw guilty pleas is set forth in W.R.Cr.P. 32(d):

> If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

We review a district court's determination of a motion to withdraw a guilty plea for an abuse of discretion.  *McCard v. State*, 2003 WY 142, ¶¶ 7-8, 78 P.3d 1040, 1042-43 (Wyo. 2003).  When conducting this inquiry, this Court focuses on the reasonableness of the district court's conclusion and whether it was based on "sound judgment with regard to what is right under the circumstances." *Jackson v. State*, 2012 WY 56, ¶ 6, 273 P.3d 1105, 1107 (Wyo. 2012). The district court's ruling will not be disturbed unless some part of it is arbitrary and capricious. *Id*.

---

[1] The order implementing the Platte County district court's decision is not contained in the record, but the parties do not dispute that Cothren was released from probation.  The parties also appear to agree that the effect of the decision was to free Cothren from the threat of further incarceration on that sentence, an issue which we therefore do not find necessary to explore in this opinion.

[¶13] Appellant argues that the Court should apply the presentencing "any fair and just reason" standard because he believes that there was no sentence after the case was remanded. The State argues that the post-sentence "manifest injustice" standard applies. We decline to engage in a detailed analysis of this issue, as the district court's decision can be affirmed under either standard.

[¶14] The most obvious problem with Cothren's effort to "withdraw" his guilty plea is that he did not actually ask the Court to do that at the hearing on the motion. Cothren did file a written motion seeking to withdraw his plea because the plea bargain could not be performed. However, at the scheduled sentencing hearing, his attorney indicated that "[w]hat we would like to do is essentially consider this entire situation as a cold plea now; that his guilty plea would stand; that – and I think especially in light of the recent changes that just occurred, that it would make sense to order a new Presentence Investigation Report on Mr. Cothren."

[¶15] In other words, Cothren asked to maintain his guilty plea, which he evidently believed would allow him to argue for a shorter sentence than the one he had agreed to, while also preventing the State from refiling the thirteen felony charges it had dismissed. This was not truly a motion to withdraw a plea of guilty and return to square one, but rather an effort to keep the benefit of the plea agreement while avoiding its burdens. This alone would have rendered the trial court's decision an exercise of sound discretion under either the "fair and just reason" or "manifest injustice" standard.

[¶16] Cothren also failed to provide a fair and just reason to allow him to withdraw his plea, and *a fortiori*, to demonstrate that manifest injustice resulted from the decision to deny the motion to withdraw his guilty plea. In *Osborn v. State*, 2012 WY 159, 290 P.3d 1096 (Wyo. 2012), Osborn filed a motion to correct an illegal sentence, which the district court granted by reducing his sentence without a hearing. *Id*. at ¶ 7, 290 P.3d at 1098. Even though Osborn's request was granted, he appealed, asserting that the district court erred by not allowing him to withdraw his guilty plea before it modified his sentence. *Id*. Osborn argued that because his bargained-for plea was premised on an illegal sentence, he was entitled to withdraw his guilty plea. *Id*. at ¶ 18, 290 P.3d at 1100-01.

[¶17] We agreed that a defendant could not bargain for an illegal sentence but held that Osborn was not entitled to withdraw his guilty plea. *Id*. at ¶¶ 19-20, 290 P.3d at 1101. We explained that where a bargained-for guilty plea results in an illegally short sentence, necessitating resentencing to a longer sentence, a defendant is entitled to withdraw his plea. *Id*. However, when the bargained-for guilty plea results in an illegally long sentence, necessitating a shorter sentence, a defendant is not entitled to withdraw his plea because the assertion that he would not have pled guilty to receive the shorter sentence is not credible. *Id*. We therefore determined that the district court did not abuse its discretion when it did not allow Osborn to withdraw his plea. *Id*. at ¶ 22, 290 P.3d at 1101.

[¶18] In this case, Cothren not only received the sentence he bargained for, which was not illegally long, but he was also discharged from probation on his Platte County sentence, meaning that he eliminated supervision on probation and potential incarceration which might have resulted from a violation of probation conditions. Beyond that, as already noted, he got what he really asked for – the court allowed his guilty plea to stand. The district court therefore did not abuse its discretion in denying Cothren's motion to withdraw his plea.

**Denial of Request for Presentence Investigation**

[¶19] We also apply the abuse-of-discretion standard when we review a district court's decision as to whether or not to order an updated presentence investigation report. *Davis v. State*, 2005 WY 93, ¶ 51, 117 P.3d 454, 473 (Wyo. 2005) (citation omitted). Cothren must demonstrate that any purported error was prejudicial and affected his substantial rights. *Id*.

[¶20] We find no abuse of discretion in the district court's failure to order an updated presentence investigation. The record before us contains a presentence investigation report from the Platte County case, as well as a post-sentence investigation report related to this case, both of which were available to the district judge at resentencing. In addition, the court received testimony from Cothren and his sister, the victim of the forgery. The court had ample information to arrive at a fair sentence. Refusal to order an updated presentence investigation is not an abuse of discretion when the sentencing judge heard evidence of mitigating circumstances before sentencing or when the information available to the court was not stale, both of which are true here. Arthur W. Campbell, *Law of Sentencing* § 10:2, at 466 (3d ed. 2004); *People v. Morton*, 430 N.E.2d 383, 384 (Ill. App. 1981).

**Length of the Sentence**

[¶21] Cothren claims that the district court erred when it sentenced him in accordance with the plea agreement rather than imposing a shorter sentence based on his success in prison. This Court reviews a district court's sentencing decision for an abuse of discretion. *Magnus v. State*, 2013 WY 13, ¶ 24, 293 P.3d 459, 467-68 (Wyo. 2013). "A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Id*. (quoting *Joreski v. State*, 2012 WY 143, ¶ 10, 288 P.3d 413, 416 (Wyo. 2012)). Cothren must demonstrate that any purported error was prejudicial and affected his substantial rights. *Id*.

5

[¶22] Sentencing courts may consider a wide range of factors relevant to the defendant and his crimes. *Magnus*, ¶ 25, 293 P.3d at 468. Due process gives defendants a right to be sentenced on accurate information. *Schaeffer v. State*, 2012 WY 9, ¶ 51, 268 P.3d 1045, 1061 (Wyo. 2012) (citation omitted).

[¶23] We find no error in the court's imposition of the same sentence it imposed earlier. The court explained that it could not justify enforcing the plea agreement against the State so as to prevent refiling of thirteen felony charges, and yet deviate from it to impose a lower sentence. It noted that the sentence had been fair when first imposed, and that the Platte County "dismissal" had removed the problem that led to remand. It also acknowledged Cothren's efforts at rehabilitation.

[¶24] There was no abuse of discretion, procedural conduct prejudicial to Cothren, inherent unfairness or injustice, or conduct which offends the public's sense of fair play. Cothren had an extensive criminal history, avoided trial on a number of charges in Natrona County and elsewhere, and received the sentence he agreed to, with the bonus of eliminating possible incarceration on the Platte County sentence. This was a fair resolution to a complex sentencing problem, and not an abuse of discretion.

**Credit for Time Served**

[¶25] To the extent that Cothren argues that his sentence was illegal due to failure to grant proper credit for time served, we apply a *de novo* standard of review. *Moronese v. State*, 2012 WY 34, ¶ 5, 271 P.3d 1011, 1013 (Wyo. 2012). Cothren sought for time served in the penitentiary on his second Natrona County sentence concurrently with the Sheridan County sentence on remand. He was awarded 680 days of credit,[2] but contended that he should have received 765 days of credit in his opening brief. The State agreed that Cothren did not receive sufficient credit, but contended that he is entitled to 748 days.

[¶26] In his reply brief, Cothren agreed with the State's calculation. We believe the credit discussion exposes an illegal hiatus in Cothren's service of his sentence, which we address below. We also believe the manner in which a district court should approach the determination of time spent in state penal institutions warrants some discussion.

[¶27] District and circuit courts must determine the amount of time a defendant has spent in presentence confinement when they impose sentence. *Hagerman v. State*, 2011 WY 151, ¶ 12, 264 P.3d 18, 21 (Wyo. 2011); W.R.Cr.P. 32(c)(2)(E) (the judgment and sentence must "[i]nclude a finding of all time served by the defendant in presentence confinement for any sentenced offense"). Presentence confinement is incarceration

---

[2] We approved the determination of time served on a prison sentence in this fashion in *Moronese,* ¶ 13, 271 P.3d at 1015. We touch on the issue here because of the complications this case presents.

6

resulting from the failure to post bond on the offense for which the sentence is entered, and does not include "other confinement that would continue to exist without regard" for the posting of bond on that offense. *Sweets v. State*, 2001 WY 126, ¶ 5, 36 P.3d 1130, 1131 (Wyo. 2001). In most cases, calculation of the time spent in presentence confinement requires the court to do no more than determine how long the defendant was held in county detention pending trial on the offense before the court, or whether he was serving time on some other sentence and would have been held regardless of ability to post bond. The defendant receives a day of presentence credit for any part of a day spent in confinement.

[¶28] The credit granted a defendant sentenced to prison is obviously important because it reduces the time before which he will be eligible for release on parole as well as unconditional release from his sentence. As explained by a leading commentator:

> Parole is part of an intricate process involving all three branches of government. In most state jurisdictions, the legislature establishes the parole system and the range of possible sentences for a crime. The executive branch implements the parole system that was established by the legislative branch. For example, it is not uncommon to find that state legislatures will require inmates who have committed certain types of offenses to serve a minimum mandatory term before becoming eligible for parole. The legislature may also establish mandatory sentences for certain crimes, and may prohibit parole altogether in certain types of cases.

> The judiciary determines the appropriateness of prison in an individual case and the length and nature of the sentence within the limits set by the legislature. In most states, the granting of parole is a function reserved exclusively to parole boards or parole commissions, and the judiciary has no authority to either grant or deny parole.

1 Neil P. Cohen, *The Law of Probation and Parole* § 4:1, at 4-3 to 4-4 (2d. ed. 1999) (footnotes omitted); *see also* Campbell, *supra,* § 15:6, at 618.[3]

---

[3] The use of parole can be traced back at least as far as the use of "tickets-of-leave" prisoners exiled to new South Wales could earn after serving a portion of their sentences, provided that they met certain standards of industry and good conduct. The governor of the penal colony determined whether these standards had been met. Paul F. Cromwell, Jr., et. al., *Probation and Parole in the Criminal Justice System*, 155-55 (2d ed. 1985).

[¶29] Wyoming is an indeterminate sentencing state that requires courts to prescribe a minimum and maximum term of confinement when a sentence for a felony is imposed. Wyo. Stat. Ann. § 7-13-201 (LexisNexis 2013); Daniel M. Fetsco, *Early Release from Prison in Wyoming: An Overview of Parole in Wyoming and Elsewhere and an Examination of Current and Future Trends*, 11 Wyo. L. Rev. 99, 103 (2011). The Wyoming Legislature granted the Board of Parole almost absolute discretion to decide whether to release inmates on parole, subject only to restrictions which deny eligibility to inmates who have escaped from a state penal institution, to those who have committed an assault with a deadly weapon while an inmate, to those who are serving a life sentence or a life sentence without possibility of parole, and to those who have been sentenced to death. Wyo. Stat. Ann. § 7-13-402 (LexisNexis 2013); Fetsco, *supra,* at 106. When a sentence is imposed, a defendant is remanded to the custody of the Department of Corrections, an executive branch department to which the legislature has granted general supervisory powers over correctional facilities, inmates, and parolees. Wyo. Stat. Ann. § 25-1-104(b), (c) (LexisNexis 2013). Those powers include the authority to administer sentences.

[¶30] Unlike the case of presentence confinement, a day spent by a well-behaved inmate in a state correctional institution is worth more than a day of credit. If an inmate has a "proper and helpful attitude, conduct and behavior in the facility and/or has adhered to the rules of the facility, the Warden may award up to fifteen (15) days per month for each month served on a sentence, which will reduce the minimum and maximum sentence to be served." Wyo. Dep't of Corrections Policy and Procedure, *Inmate Good Time* 1.500 (effective July 1, 2010).[4] An inmate cannot receive this "good time" credit until he is confined in a Department of Corrections facility. *Id.*

[¶31] In addition to the good time awarded by the DOC, the Board of Parole may award an inmate who has "demonstrated an especially proper and helpful attitude, exemplary conduct and behavior" up to one month of special good time off his minimum sentence, up to a maximum of one year credit. *Id.* Moreover, the Board may award up to a year off the minimum sentence for the purpose of allowing parole to an adult community corrections program or certain treatment programs. *Id.* An inmate is eligible for parole when he has served the minimum sentence less good time and special good time allowances, and of course the length of the period of parole is shortened by good time. The Board may refuse to award or remove good time and require an inmate like Cothren to serve his entire minimum sentence before granting parole. Fetsco, *supra,* at 103, 107-08. This is called "flattening" a sentence, and it is done when the inmate has not behaved well enough to earn good time or has done something to lose it. *Id.*

---

[4] *See also* Governor's Office, *Good Time Allowances for Inmates and Parolees of the Wyoming Department of Corrections* (effective July 1, 2010).

[¶32] As the foregoing demonstrates, the actual length of a sentence served depends on an inmate's conduct as well as the length of time spent in a correctional institution. This can lead to double jeopardy concerns about the grant of credit when a defendant is resentenced, or when his sentence is vacated and he is either convicted on the same charge or pleads guilty to it. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989), the United States Supreme Court held as follows:

> And [the double jeopardy clause] protects against multiple punishments for the same offense. This last protection is what is necessarily implicated in any consideration of the question whether, in the imposition of sentence for the same offense after retrial, the Constitution requires that credit must be given for punishment already endured. The Court stated the controlling constitutional principle almost 100 years ago, in the landmark case of *Ex parte Lange*, 18 Wall. 163, 168, 21 L.Ed. 872:
>
> > If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And * * * there has never been any doubt of (this rule's) entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.
>
> . . .
>
> We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited"[13] in imposing sentence upon a new conviction for the same offense.

. . .

9

[13]Such credit must, of course, include the time credited during service of the first prison sentence for good behavior, etc.[5]

*Id.* at 717-19 & n.13, 89 S. Ct. at 2076-77 & n.13 (some footnotes omitted).

[¶33]  We believe it is appropriate to include a determination of the time actually spent in prison prior to resentencing in the judgment and sentence, even though the Department of Corrections and Board of Parole must administer the sentence and decide when an inmate is eligible for parole.  This is consistent with the recommendation of American Bar Association Standard for Criminal Justice 18-6.8(c), (d), and (e).  As explained in the commentary to that section:

> The best method for implementation of this principle is to instruct correctional authorities to award such a credit automatically.  Thus, standard 18-6.8 strictly limits the formal role of the sentencing court in determining the appropriate credit to a fact-finding responsibility.  It contemplates that the court will simply place on the sentencing record the amount of time already served, as standard 18-6.6(a)(iii) states.

3 ABA Standards for Criminal Justice 18-6.8 cmt., at 492 (2d ed. 1980).[6]

[¶34]  Including the calculation of time spent in facilities operated by the DOC in the judgment and sentence associates the actual time served with the crime on which the defendant is resentenced, which may help to assure that the Department can relate the time served to the crime on which resentencing took place.  On the other hand, it would be practically impossible for a court to determine the amount of good time or special good time due without receiving testimony from or the records of the Department of Corrections or the Board of Parole, since it would have no information concerning whether an inmate had earned or lost good time or special good time without obtaining it from the agencies statutorily entrusted with making the decision.  As already noted, the grant or removal of good time is discretionary with the Department and Board of Parole, not the judicial branch.  At least one court has held that a court lacks jurisdiction to make decisions regarding credit for good behavior because that authority was entrusted exclusively to the executive branch by the legislature.  *State v. Trieb*, 516 N.W.2d 287, 292 (N.D. 1994).

---

[5]  The Court later held that prison authorities are not required to grant inmates credit for good conduct while they are being held in pretrial detention by local authorities.  *McGinnis v. Royster*, 410 U.S. 263, 272-73, 93 S. Ct. 1055, 1060-611, 35 L. Ed. 2d 282 (1973); Campbell, *supra*, § 9:29 at 453.

[6]  To the same effect, *see* ABA Standards for Criminal Justice Sentencing 18-5.19 cmt., at 214 (3d. ed. 1994).

[¶35] The sentencing court should therefore not attempt a calculation of time earned through good behavior, and the district court did not do so in this case. On the other hand, little harm could result from noting in the judgment and sentence that *Pearce* requires that credit earned for good conduct before resentencing be granted, and that the court anticipates that the executive branch will administer that credit. The California courts apply a rule which anticipates this kind of coordination between the judicial and executive branches. *In re Martinez*, 65 P.3d 411, 412 (Cal. 2003) (trial court must determine when actual confinement began after conviction was reversed, and prisoner pled guilty again, but prison authorities must determine conduct credit).

**Legality of Sentence**

[¶36] In *Cothren I*, we held that a prisoner is entitled to serve his sentence in one continuous "stretch," and that he cannot be required to serve it in installments unless the interruption was due to escape, a parole violation, or some other fault on his part. *Cothren I*, ¶¶ 10-11, 281 P.3d at 355. Nothing in this record suggests that Cothren has done anything to interrupt his incarceration on any of the sentences imposed.

[¶37] Neither Cothren nor the State has directly questioned whether the amended judgment and sentence violated *Cothren I* because it may require him to serve his sentence in two segments. However, their dispute about credit served brought this issue to light. We have held that it is in the interest of judicial economy to determine whether a sentence is illegal and correct it even if it first comes to our attention in our examination of the appeal. *Chapman v. State*, 2013 WY 57, ¶ 72, 300 P.3d 864, 878 (Wyo. 2013) (quoting *Endris v. State*, 2010 WY 73, ¶ 21, 233 P.3d 578, 583 (Wyo. 2010)).

[¶38] The record before us is incomplete, but the briefing and the record we have indicates that the amended sentence does not comply with *Cothren I's* requirement that a prisoner must serve his sentence in one uninterrupted "stretch." The amended judgment and sentence, like the original judgment and sentence, requires Cothren to serve his second Natrona County sentence concurrently with the Sheridan County conviction and consecutively to the first Natrona County conviction. If the first Natrona County sentence ran concurrently with the Sheridan County sentence, the second Natrona County sentence could potentially be served without interruption, if it began at the end of the first Natrona County sentence while the longer Sheridan County sentence was still being served.[7]

---

[7] Taking into account the dates they were set to start, if concurrent, the minimum and maximum terms of the Sheridan County sentence exceeded those of the first Natrona County sentence by, respectively, two and three years.

[¶39] On the other hand, if the first Natrona County sentence is to run consecutively to the Sheridan County sentence, the sentence in this case cannot be served in a lawful manner. If this sentence was to begin when it was first imposed, so as to run concurrently with the Sheridan County sentence, it could not also begin after the Sheridan County sentence and the consecutive first Natrona County sentence are completely served. That is impossible. Nor could it run from when it was first imposed until Cothren was paroled from the Sheridan County sentence to serve the first Natrona County sentence, then stop and resume when he was paroled from the first Natrona County conviction. That would result in the same sort of interrupted sentence that we held unlawful in *Cothren I*.

[¶40] Unfortunately, the record does not contain the order revoking Cothren's probation in the first Natrona County case. In its brief, the State arrived at its calculation of credit by concluding that Cothren should not receive credit against the sentence in this case for a period of time during which he was serving the first Natrona County sentence, meaning that there has to be a forbidden break in the service of the sentence in this case. The parties stipulated that Cothren had been paroled to the first Natrona County sentence at the time of his resentencing, as Cothren also testified. This would also indicate that he had ceased to serve the Sheridan County sentence and was serving a consecutive first Natrona County sentence. The parties thus agree that there was an interruption in service of the sentence in this case.

[¶41] We appreciate the creativity shown by the plea agreement, as well as the challenge the court faced in crafting a legal sentence related to a number of other sentences. Unfortunately, it appears to be impossible to implement the agreement because of the effect of the first Natrona County probation revocation and resulting sentence. The only resolution to this refractory problem will be to resentence so that the second Natrona County sentence runs concurrently with the first Natrona County sentence as well as the Sheridan County sentence. We acknowledge that this will be a windfall to Cothren. Under our ruling in *Osborn, supra,* Cothren will not be entitled to withdraw his plea, because he obtained a sentence which will be less than he bargained for. 2012 WY 159, ¶ 20, 290 P.3d at 1101.

## CONCLUSION

[¶42] We find no error in the district court's rulings on Cothren's motion to withdraw his guilty plea or relating to other aspects of resentencing. Unfortunately, we find that the amended sentence requires an interruption in service of the period of incarceration in this case, and that this sentence must be made to run concurrently with the first Natrona County sentence. We therefore reverse and remand for entry of an amended judgment and sentence which accomplishes that end. The district court should determine the amount of time spent in custody of the Department of Corrections to the date of

resentencing and include that calculation in its judgment and sentence, but should not attempt to make any determination of good time earned or lost.