BOOMGAARDEN, Justice.
[¶1] Appellant, Steven Mitchell, was held in contempt of court for violating a custody order. The district court ordered confinement until Mr. Mitchell purged himself of contempt by relinquishing custody of the minor *833 child. While confined for contempt, Mr. Mitchell pled no contest to one count of felony interference with custody, in violation of Wyo. Stat. Ann. § 6-2-204(a)(ii) and (d)(ii) (Lexis Nexis 2017). The district court imposed a sentence of three and one-half years to five years of imprisonment, with no credit for presentence incarceration. The district court also ordered the criminal sentence to commence on termination of Mr. Mitchell's confinement for contempt. Mr. Mitchell appeals his criminal sentence contending it is illegal. We affirm.
ISSUE
[¶2] Mr. Mitchell states the issue on appeal as: "Did the district court illegally sentence Mr. Mitchell when it failed to credit him for presentence confinement and failed to permit him to begin serving his [criminal] sentence?"
FACTS
[¶3] Mr. Mitchell's criminal proceeding arose from his actions during a lengthy custody battle over his daughter, EP. The custody proceedings involved several jurisdictions and provide useful context here. The State of Montana established paternity and child support after EP's birth in 2010, but did not formally establish custody. The parties later moved to Wyoming where EP's mother, AP, commenced custody proceedings. Unsatisfied with the Wyoming custody proceedings, Mr. Mitchell, as an enrolled member of the Cheyenne River Sioux Tribe, filed proceedings in the Cheyenne River Sioux Tribal Court (tribal court). He also filed a custody proceeding in Weston County, Wyoming. The record is somewhat limited as to the civil filings in the various jurisdictions. We glean the following facts from the exhibits and transcripts provided in relation to Mr. Mitchell's appeal.
[¶4] The parties initially agreed EP would reside with AP in Sheridan, Wyoming, subject to liberal visitation by Mr. Mitchell, who lived in Newcastle, Wyoming. On March 18, 2012, Mr. Mitchell picked up EP for his usual week-long visit. During the visit, he noticed EP was very ill. He took EP to three different doctors before one discovered a coin lodged in her throat. After the coin was surgically removed, Mr. Mitchell kept EP with AP's permission until her treatment concluded. Thereafter, he refused to return EP to her mother and denied all contact, claiming AP was abusing and neglecting their daughter.[1]
[¶5] AP's repeated attempts to see her daughter failed. On July 1, 2013, AP petitioned the district court in Sheridan, Wyoming, to formally establish custody. Mr. Mitchell answered and, after retaining counsel, moved to dismiss the petition or, alternatively, change the venue. During the motion hearing, the parties advised the court of their agreement on temporary custody and visitation, wherein Mr. Mitchell would have primary custody subject to visitation by AP. Due to EP's young age and the length of time AP was denied contact with her mother, the parties agreed to a graduated visitation schedule, beginning with supervised visitation through a third party. The district court entered its written order on December 11, 2013, which denied Mr. Mitchell's motion and adopted the parties' proposed terms on temporary custody and visitation.
[¶6] Mr. Mitchell refused to comply with the ordered visitation schedule, and AP filed a motion for an order to show cause. Prior to the show cause hearing, Mr. Mitchell moved to Custer, South Dakota, and retained new counsel. On February 21, 2014, Mr. Mitchell filed a motion to modify the temporary order contending the visitation schedule was not in EP's best interests because AP neglected EP when she was a baby and AP had not had any meaningful contact with EP since March 2012. Three days later, the district court held the show cause hearing and found Mr. Mitchell in contempt of court. The district court admonished Mr. Mitchell, ordered visitation to commence as soon as supervised visitation could be arranged through the third party, and ordered Mr. Mitchell to pay AP's attorney's fees and costs.
*834 [¶7] Although Mr. Mitchell completed the necessary paperwork for supervised visitation to commence, he cancelled ten of the eleven scheduled visits, permitting only one visit. AP filed another motion for order to show cause. In late September 2014, the district court again found Mr. Mitchell in contempt of court after he admitted he refused to allow supervised visitation and telephone contact. The court admonished Mr. Mitchell, ordered him to abide by the terms of the temporary custody order, and ordered him to pay AP's attorney's fees and costs incurred in bringing the second contempt motion.
[¶8] In mid-October, at Mr. Mitchell's direction, his attorney requested a scheduling conference to set deadlines for the custody proceeding. The next day Mr. Mitchell demanded his attorney withdraw the scheduling conference because he wanted a new judge prior to the custody trial, and demanded his attorney withdraw as Mr. Mitchell's counsel. Mr. Mitchell's attorney attempted to vacate the conference, but the court denied the request.[2] The district court set trial for February 6, 2015. Mr. Mitchell's attorney provided the order to Mr. Mitchell by email and mail. The court permitted Mr. Mitchell's attorney to withdraw after receiving Mr. Mitchell's written consent.
[¶9] Mr. Mitchell did not appear for the custody trial and the district court found him in default.[3] On February 23, 2015, the district court awarded primary custody to AP, and required the parties to keep each other informed of their addresses and telephone numbers, inter alia (February 2015 custody order). The district court emailed a copy of the custody order to Mr. Mitchell. Mr. Mitchell nevertheless refused to relinquish custody of EP and, on April 6, 2015, the district court issued a nunc pro tunc bench warrant for his arrest.[4]
[¶10] AP also sought assistance from the Sheridan police department. After receiving the police report, the State prepared a criminal information on April 13, 2015, charging Mr. Mitchell with one count of felony interference with custody, in violation of Wyo. Stat. Ann. § 6-2-204(a)(ii), (d) - (e). The circuit court issued a criminal warrant for his arrest that same day.
[¶11] After learning of the warrants for his arrest through social media, Mr. Mitchell contacted AP and stated he was willing to let AP see EP, but only if AP would agree to a new custody order. Eager to reconnect with her daughter, AP agreed to Mr. Mitchell's proposed custody and visitation terms, which were almost identical to those she agreed to, and the court ordered in 2013. AP and Mr. Mitchell discussed arrangements for AP to visit EP on the weekend of July 4, 2015. Although AP agreed to meet Mr. Mitchell on the reservation, outside of the reach of the arrest warrants, Mr. Mitchell became suspicious of AP, alleging she was playing games, using the meeting as a ruse, and trying to get him in trouble. The visitation never occurred and Mr. Mitchell refused to sign the parenting plan he proposed.
[¶12] A year later, in July 2016, Mr. Mitchell, pro se, filed a motion requesting the district court relinquish jurisdiction to the tribal court. When he did not obtain the relief he desired, he turned himself in to the Weston County Sheriff in October 2016-a year and a half after the civil and criminal *835 warrants issued. He did not relinquish custody of EP. Mr. Mitchell was transported to the Sheridan County Detention Center where he was detained on both warrants.
[¶13] On October 17, 2016, Mr. Mitchell first appeared in district court on the civil bench warrant. The district court held Mr. Mitchell in civil contempt and ordered confinement until he complied with the February 2015 custody order by relinquishing custody of EP.
[¶14] Later that day, Mr. Mitchell appeared in circuit court on the criminal warrant. The circuit court set cash-only bail at $100,000 and noted it would readdress bond after receiving proof EP has been returned to Sheridan County and/or the custodial parent. The circuit court held a preliminary hearing and bound Mr. Mitchell over to district court where he was arraigned on November 1, 2016. Mr. Mitchell pled not guilty and requested a bond reduction, which the district court denied. The Honorable John G. Fenn, who oversaw the custody proceedings and Mr. Mitchell's arraignment, reassigned the case to the Honorable William J. Edelman for the remainder of the criminal proceedings. Mr. Mitchell requested another bond reduction, which Judge Edelman denied.
[¶15] In November 2016, Mr. Mitchell retained new counsel and filed a motion to set aside the February 2015 custody order.[5] He also moved to quash the order of commitment and asked the district court to transfer jurisdiction to the tribal court. The district court denied both motions and found that Mr. Mitchell remained in civil contempt for his continued violation of the custody order. The district court ordered Mr. Mitchell to remain confined until he complied with the custody order, and again ordered him to pay AP's attorney's fees and costs.
[¶16] During a December 2016 status conference in the custody proceedings, Mr. Mitchell's counsel informed the court:
He knows that he holds the key to unlocking his contempt, and by turning the child over, that would unlock the contempt ... Mr. Mitchell does not plan on doing so. ... He will not turn the child over. ... He believes it will be better for him to you [sic ] sit in jail until the child's 18 and live with [Mr. Mitchell's mom], than to just be turned over to a mother she doesn't know.
Later that month, Mr. Mitchell's counsel filed a petition to modify the February 2015 custody order and then moved to withdraw.[6]
[¶17] In February 2017, the State amended its information to reflect two counts of interference with custody for differing time periods. In July, Mr. Mitchell and the State entered a plea agreement, which required the State to dismiss Count I and amend Count II of the information to expressly permit a five-year maximum sentence, in exchange for a plea of no contest to Count II as amended. The district court accepted the plea and ordered a presentence investigation on August 14, 2017.[7]
*836 [¶18] During the sentencing hearing in October 2017, the State argued that probation was inappropriate because Mr. Mitchell's interference with custody was an ongoing offense. The State presented evidence demonstrating that even after Mr. Mitchell changed his plea, he remained undeterred from thwarting the February 2015 custody order, which he considered null and void. Specifically, the State presented recorded telephone calls where Mr. Mitchell and his mother discussed plans to continue to pursue protective orders in the tribal court to preclude AP from seeing EP, disqualify or utilize political pressure on tribal judges to obtain favorable rulings, and continue to hide EP if a protective order was not issued.
[¶19] The district court agreed Mr. Mitchell's conduct constituted an ongoing offense and determined probation was inappropriate, noting that as early as a week before the sentencing hearing, Mr. Mitchell continued his efforts to undermine the existing civil action in Sheridan County. The court sentenced Mr. Mitchell to three and one-half years to five years of imprisonment for violation of Wyo. Stat. Ann. § 6-2-204(a)(ii), (d)(ii),[8] with no credit for presentence confinement. The court further ordered the criminal sentence to commence after Mr. Mitchell's civil contempt confinement ends.
[¶20] Mr. Mitchell filed a motion to reconsider his sentence, claiming it was illegal. The district court denied the motion. Mr. Mitchell timely filed his notice of appeal on November 3, 2017.
STANDARD OF REVIEW
[¶21] "Sentencing decisions are within the broad discretion of the sentencing court." Jones v. State , 2003 WY 154, ¶ 11, 79 P.3d 1021, 1025 (Wyo. 2003) (citing Smith v. State , 941 P.2d 749, 750 (Wyo. 1997) ). In our review for an abuse of discretion, we must "determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." Herrera v. State , 2003 WY 25, ¶ 10, 64 P.3d 724, 727 (Wyo. 2003) (citations omitted). The sentencing court's discretion is also limited "inasmuch as a court may not enter an illegal sentence." Bird v. State , 2015 WY 108, ¶ 9, 356 P.3d 264, 267 (Wyo. 2015) (citations omitted). "A sentence is illegal when it exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law." Palmer v. State , 2016 WY 46, ¶ 9, 371 P.3d 156, 158 (Wyo. 2016) (citations and internal quotation marks omitted). "[W]hether a sentence is illegal is a question of law, which we review de novo. " Manes v. State , 2007 WY 6, ¶ 7, 150 P.3d 179, 181 (Wyo. 2007) (citations omitted).
DISCUSSION
[¶22] Mr. Mitchell contends the district court imposed an illegal sentence. He first argues his criminal sentence violates the double jeopardy clause of the federal and state constitutions because he was punished twice for the same act - the failure to comply with the February 2015 custody order. Mr. Mitchell also alleges the court unlawfully increased the statutory minimum and maximum sentence for interference with custody by denying credit for presentence confinement and delaying the commencement of his criminal sentence. He further asserts the court wrongfully denied credit for presentence confinement because he could not post bail due to the conditions imposed by the court. The State counters that the criminal sentence is not illegal because the court imposed a single sentence for interference with custody that was within the statutory limits, the bail conditions imposed did not violate any constitutional rights or other law, and the district *837 court properly exercised its discretion when it ordered the criminal sentence to commence after Mr. Mitchell purged himself of contempt in the custody proceeding. We address Mr. Mitchell's double jeopardy claim first.
I. Double Jeopardy
[¶23] Mr. Mitchell argues that when the contempt action is properly characterized as criminal contempt, his sentence for interference with custody violates the double jeopardy provisions of the United States and Wyoming Constitutions, which prohibit double punishment for the same offense. U.S. Const. amend. 5 ; Wyo. Const. art. 1, § 11. The State contends that double jeopardy does not apply because, contrary to Mr. Mitchell's assertions, he was found in civil contempt and was not punished twice for the same offense.
[¶24] We previously compared the double jeopardy provisions in our state and federal constitutions and explained:
The Fifth Amendment to the United States Constitution and article 1, section 11 of the Wyoming Constitution protect a person from twice being put in jeopardy of prosecution, conviction, or punishment for the same criminal offense . Though the two provisions differ in language, this Court has stated, they have the same meaning and are co-extensive in application.
Derrera v. State , 2014 WY 77, ¶ 23, 327 P.3d 107, 113 (Wyo. 2014) (citations and quotations marks omitted) (emphasis added). "As used in the Double Jeopardy Clause, 'same offense' means 'the same crime, not the same transaction, acts, circumstances, or situation.' " Parker v. State , 882 P.2d 1225, 1229 (Wyo. 1994) (citations omitted.) "The United States Supreme Court has recognized that nonsummary criminal contempt is a crime for the purposes of a double jeopardy analysis." Munoz v. Munoz , 2002 WY 4, ¶ 8, 39 P.3d 390, 392 (Wyo. 2002) (citing International Union, United Mine Workers of Am. v. Bagwell , 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ; United States v. Dixon , 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) ). However, "[d]ouble jeopardy principles generally do not apply to [a civil] order assessing solely coercive confinement when a contemnor can obtain release by purging contempt." Ex parte Jones , 36 S.W.3d 139, 142 (Tex. Ct. App. 2000) (citing Yates v. United States , 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957) ; Ex parte Hudson , 917 S.W.2d 24, 26 (Tex.1996) ); see Munoz , ¶ 15, 39 P.3d at 394. As the Seventh Circuit aptly explained:
The double jeopardy clause is not implicated in such cases because a civil contempt proceeding, unlike a criminal contempt proceeding, is not a 'jeopardy' within the meaning of the double jeopardy clause. ... Because criminal contempt is a crime in the ordinary sense, a criminal contempt proceeding clearly constitutes a 'jeopardy of life or limb' within the meaning of the double jeopardy clause. In contrast, a civil contempt sanction is coercive or remedial in nature; its purpose is only to compel compliance with a court order, or to compensate an injured party.
United States v. Ryan , 810 F.2d 650, 653, n.1 (7th Cir. 1987) (internal citations and some quotation marks omitted). Thus, whether Mr. Mitchell's criminal sentence for custodial interference violates double jeopardy principles under either constitution, turns on whether the contempt proceeding was civil or criminal.
[¶25] In its commitment order, the district court expressly stated Mr. Mitchell was in civil contempt and made the following pertinent findings:
1. On February 23, 2015, this Court entered its Order Establishing Child Custody, Support and Visitation awarding primary custody of [EP] to Mother, subject to supervised visitation with Father.
2. Father took the child to the Cheyenne River Indian Reservation in South Dakota, and refused to allow Mother to have any contact with [EP], even after the Order Establishing Child Custody, Support and Visitation had been entered.
...
8. The Court finds that Father is in civil contempt for willfully disobeying the Order Establishing Child Custody, Support and Visitation .
*838 9. In order to purge himself of this contempt, Father must return [EP] to Mother's custody. ...
10. Once the child has been returned to Mother, this Court will quash the bench warrant, and Father will be released from jail.
(Emphasis added.) Mr. Mitchell disagrees and asserts the court imposed confinement punitively, rather than remedially, when all of the circumstances are considered, including the subsequent criminal proceedings. He also alleges the court intended the confinement to punish him for not complying with the child custody order in the past, rather than coerce him to comply with the custody order going forward. Because the purpose of the contempt order was punitive, he argues, the order was for criminal contempt, not civil contempt.
[¶26] We determine whether a contempt order is civil or criminal in nature by considering the following four factors:
1. In what manner did the contempt happen, that is, did the contemnor refuse to do an affirmative act or did the contemnor do that which he was ordered not to do;
2. [W]hat was the substance of the proceeding;
3. [W]hat kind of punishment was imposed; and
4. [F]or what reasons did the court impose that kind of punishment.
Munoz , ¶ 11, 39 P.3d at 393 (citation omitted). The third and fourth factors, which focus on the type and reason for the contempt order, "are often denominated as the principal considerations in determining whether a contempt proceeding is criminal or civil." Stephens v. Lavitt , 2010 WY 129, ¶ 15, 239 P.3d 634, 638 (Wyo. 2010) (citations omitted). Examining the contempt proceeding and commitment order in light of these factors, we conclude Mr. Mitchell was held in civil contempt.
[¶27] Under the first factor, "if the contemnor refuses to do an affirmative act previously ordered by the court, the proceeding is considered to be civil; if the contemnor does something he was ordered not to do, the proceeding is criminal." Stephens , ¶ 12, 239 P.3d at 638 (citations omitted). The second factor is "determined by analyzing the course of proceedings." Id. ¶ 13, 239 P.3d at 638. Mr. Mitchell refused to relinquish custody of EP to her mother as previously ordered by the district court. AP, rather than the State, brought the contempt action within the existing civil proceeding to enforce compliance with the custody order. Application of the first and second factors suggest a civil contempt proceeding.
[¶28] The final two factors "address the type of punishment imposed and the district court's reasons for imposing the punishment. ..." Id. ¶ 15, 239 P.3d at 638 (citing Horn v. District Court, Ninth Judicial District , 647 P.2d 1368, 1372-73 (Wyo. 1982) ). Under these factors, we "must consider whether the punishment is 'for a definite term,' generally indicating criminal contempt, or whether it is conditional upon compliance with a court order, thereby indicating civil contempt." Tori R.A. Kricken, A Comprehensive Treatise on Contempt of Court in Wyoming , 15 Wyo. L. Rev. 1, 5 (2015) (footnote omitted). Further, we must determine if the punishment was intended as a deterrent, thereby invoking the court's criminal contempt powers, or if it was a means to coerce compliance with the court's order, thereby invoking the court's civil contempt authority. Id. (footnote omitted). The district court ordered Mr. Mitchell to be confined in county jail until he purged himself of contempt by relinquishing custody of EP pursuant to the custody order. The court imposed the confinement to coerce Mr. Mitchell to return the child and comply with the custody order. The contempt order states its remedial purpose by explicitly conditioning Mr. Mitchell's release on the child's return. Thus, the type of punishment imposed and the reasons the court imposed the punishment also indicate the contempt proceeding was civil. See Swain v. State , 2009 WY 142, ¶ 13, 220 P.3d 504, 508 ; Munoz , ¶¶ 10, 14, 39 P.3d at 393-94.
[¶29] Our conclusion that Mr. Mitchell was held in civil contempt is dispositive of his double jeopardy claim. "The [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the *839 same offense." Hudson v. United States , 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (emphasis in original) (citations omitted). Mr. Mitchell was not subjected to successive criminal prosecutions for the same offense and, consequently, the constitutional prohibition against double jeopardy was not implicated. See Munoz , ¶ 15, 39 P.3d at 394.
II. Length and Commencement of Criminal Sentence
[¶30] We next consider Mr. Mitchell's claim that the district court unlawfully increased his minimum and maximum sentence for interference with custody by declining to give credit for presentence confinement and delaying the commencement of his criminal sentence.
[¶31] Wyoming law requires felony sentences to prescribe a minimum and maximum term of confinement. Cothren v. State , 2013 WY 125, ¶ 29, 310 P.3d 908, 916 (Wyo. 2013) ( Cothren II ) (citing Wyo. Stat. Ann. § 7-13-201 ). As part of sentencing, "[d]istrict and circuit courts must determine the amount of time a defendant has spent in presentence confinement when they impose sentence." Id. ¶ 27, 310 P.3d at 915 (citation omitted); see W.R.Cr.P. 32(c)(2)(E)-(F) (requiring sentences to state the amount of time the defendant spent in presentence confinement and to what extent the defendant receives credit for that confinement). The credit granted toward a sentence is important because it shortens the amount of time until the convicted person may be eligible for release on parole or unconditional release. Cothren II , ¶ 28, 310 P.3d at 915. "A sentence that does not include proper credit constitutes an illegal sentence." Swain , ¶ 8, 220 P.3d at 506.
[¶32] The district court sentenced Mr. Mitchell to three and one-half years to not more than five years for the felony crime of interference with custody. The parties do not dispute that this sentence is within the statutory limits for that offense. See Wyo. Stat. Ann. §§ 6-2-204(a)(ii), (d)(ii) and 7-13-201 (Lexis Nexis 2017). Nonetheless, Mr. Mitchell contends the district court unlawfully increased the minimum and maximum punishment "beyond what the statutes permit" by denying credit for presentence confinement and preventing him from serving his criminal sentence immediately.
A. Credit for Presentence Confinement
[¶33] A defendant is entitled to credit for the defendant's "time spent in presentence confinement, against both the minimum and maximum sentence, if the defendant was unable to post bond for the offense of which he was convicted." Rosalez v. State , 955 P.2d 899, 900 (Wyo. 1998) (citations omitted); see also Tallerdy v. State , 2014 WY 47, ¶ 8, 322 P.3d 47, 49 (Wyo. 2014) (citation omitted) ("The law is well-settled that a defendant is entitled to sentencing credit for the time he spends in presentence confinement when that confinement is due to his financial inability to post bond with respect to the charged offense."). "The purpose of this rule is to provide equal protection to defendants who are unable to post bond because of their indigence." Gomez v. State , 2004 WY 15, ¶ 18, 85 P.3d 417, 421 (Wyo. 2004). "A defendant is not, however, entitled to such credit when his confinement would have continued despite his ability to post bond." Barnes v. State , 2008 WY 6, ¶ 29, 174 P.3d 732, 740 (Wyo. 2008) (citing Gomez , ¶ 13, 85 P.3d at 420 ). In other words, "a defendant need not be granted credit for presentence confinement unless the confinement was solely due to his inability to post the bond" for the charged offense. Rosalez , 955 P.2d at 900 (citation omitted).
[¶34] We have not had occasion to squarely address whether a defendant is entitled to presentence confinement credit against a criminal sentence for time spent confined for civil contempt.[9] Notably, our *840 jurisprudence defines "presentence confinement incarceration" as "incarceration for inability and failure to post bond on the offense for which the sentence is entered and does not include revoked probation or other confinement that would continue to exist without regard for bond posting capabilities in this particular proceeding ." Renfro v. State , 785 P.2d 491, 498 n.8 (Wyo. 1990) (italics omitted and emphasis added). Under this definition, a defendant would not be entitled to credit if he would remain confined "without regard for bond posting capabilities" in the criminal proceeding. See id. The phrase "other confinement" is broad. Civil contempt confinement "would continue to exist without regard for bond posting capabilities" for the criminal offense. We therefore hold that "other confinement" includes confinement for civil contempt. Accordingly, Mr. Mitchell would not be entitled to presentence credit if his confinement for civil contempt would continue independent of his ability to post the cash-only bail for his criminal offense.
[¶35] Mr. Mitchell does not view his confinement for contempt independent of the cash-only bail requirement. Rather, he contends the "Sheridan County courts" conditioned his pretrial release on depositing $100,000 cash and returning the child to Sheridan County and/or the custodial parent. Mr. Mitchell asserts that the district court's refusal to lower the bond amount or remove the condition of relinquishing custody of his child resulted in pretrial release conditions so onerous that he would have remained incarcerated even if he had successfully overturned the contempt commitment order in the custody case.[10] Mr. Mitchell argues that due to the onerous conditions, he is entitled to credit for his presentence confinement. We disagree.
[¶36] Mr. Mitchell's argument is premised on a misreading of the bond/appearance order as requiring him to purge his civil contempt as a bond condition. The order in question is a bond/appearance order form, on which the circuit court checked the box requiring Mr. Mitchell to deposit $100,000 cash with the court. The circuit court also checked the box entitled "Upon the following further conditions" and handwrote: "Upon proof [the] minor child has been returned to custody of Sheridan Co[unty] and/or custodial parent[,] bond will be readdressed." The bond/appearance order does not condition Mr. Mitchell's release on return of the child. If Mr. Mitchell had deposited the cash-only bail of $100,000, nothing in the bond/appearance Order prevented his release on the criminal warrant. Rather, relinquishing custody of the child was an incentive for reducing the amount of Mr. Mitchell's bail.
[¶37] Mr. Mitchell also fails to recognize that the bond amount was irrelevant under circumstances where, as here, even had he been able to post bail, he would have remained confined under the civil commitment order, which remained in place. Mr. Mitchell did not purge himself of contempt despite every opportunity to do so. He remained voluntarily confined for civil contempt, thereby making reconsideration of the criminal bond amount irrelevant as both Mr. Mitchell's *841 attorney and the court acknowledged during the second bond modification hearing:
THE COURT: Ms. Long, if I entered a bond order that placed Mr. Mitchell on an [own recognizance] release, would he be eligible for release from custody?
MS. LONG: Your Honor, right now he would not .
THE COURT: Okay. Then until such time as he is eligible for release from custody, this bond issue is moot. I mean, I could effectively eliminate the bond in this case and Mr. Mitchell can't get out of jail . If as I told him in his [second] arraignment, if at any point in time the civil case order changes and he becomes eligible for release, I would invite you to bring that matter to my attention immediately and we will have a hearing that day, assuming I'm not in trial or something. But the minute he can be released from custody in that case, and this bond makes any difference at all, we'll take it up.
...
[T]here is another court order that provides for his detention, and until that order gets squared away there is no point in addressing bond in this case. Because it will not result in his freedom in any way .
(Emphasis added.) As the district court explained, the amount of the bond and/or the ability to post bond for felony interference with custody was irrelevant so long as Mr. Mitchell remained in custody for civil contempt - a commitment imposed prior to Mr. Mitchell's preliminary hearing on the criminal charges, and the duration of which is entirely in Mr. Mitchell's control.
[¶38] In sum, Mr. Mitchell's presentence confinement for civil contempt is wholly independent of his criminal bond and is not "presentence confinement incarceration" that qualifies for credit against his criminal sentence should he be unable to post bond, thus rendering the amount of Mr. Mitchell's bail irrelevant unless and until he purges himself of contempt. Consequently, Mr. Mitchell is not entitled to credit while he remains incarcerated for civil contempt.[11] See Rosalez , 955 P.2d at 900. To hold otherwise would undermine the coercive effect of the district court's contempt order. Because Mr. Mitchell is not entitled to presentence confinement credit, the district court did not unlawfully increase his minimum and maximum sentence.
B. Delay in Commencing Criminal Sentence
[¶39] Mr. Mitchell contends the district court unlawfully increased his sentence for interference with custody by delaying commencement of the criminal sentence. Mr. Mitchell asserts that because his criminal sentence is tolled until his confinement for civil contempt ends, the precise date of which is not yet known, "neither Mr. Mitchell nor his jailors have any idea of when his criminal sentence will begin or of how long he will remain incarcerated." Thus, Mr. Mitchell argues, the district court's ruling should be overturned to permit him to immediately begin serving his criminal sentence. Mr. Mitchell seems to suggest that a sentencing court is without discretion to determine whether a criminal sentence will run prior, concurrent, or consecutive to a civil commitment order. We have never addressed whether the district court has discretion to delay commencement of a criminal sentence until such time as a civil contempt commitment order expires.
[¶40] In the criminal context, a sentencing court "has discretion in determining whether [multiple] sentences will be served consecutively or concurrently." Merch. v. State Dep't of Corr. , 2007 WY 159, ¶ 13, 168 P.3d 856, 862 (Wyo. 2007) (citations omitted). A sentence is presumed to be consecutive when a sentencing court is silent on the concurrent or consecutive nature of a *842 sentence: "[I]f no specification is made as to whether multiple sentences are concurrent or whether they are consecutive, the sentences will be deemed to be consecutive whether they are imposed in the same case, in different cases, or by different courts." Pearson v. State , 866 P.2d 1297, 1299 (Wyo. 1994) ; see also Bird , ¶ 11, 356 P.3d at 268. Further, the court may validly impose a sentence of imprisonment to begin on expiration of a previous sentence. 21A Am. Jur. 2d Criminal Law § 811 (2018) (footnotes omitted); see also United States v. Randall , 472 F.3d 763, 766 (10th Cir. 2006) (citation omitted) (explaining that "when a consecutive sentence is imposed, the second sentence begins only upon termination of the prior term of imprisonment."); People v. Green , 55 Ill.App.3d 903, 13 Ill.Dec. 639, 371 N.E.2d 356, 359 (1977) (citation omitted) ("Where consecutive sentences have been imposed, the judgment need not fix the precise day on which each successive term of imprisonment shall commence. It is sufficient if every succeeding term begins at the expiration of the previous one."); Bundy v. State , 176 Tenn. 198, 140 S.W.2d 154, 155 (1940) (citation and quotation marks omitted) ("There is no doubt that a court may impose a sentence to commence upon the termination of another sentence imposed by another court unless a statute prohibits it. If a court exercising jurisdiction in criminal cases may lawfully impose a sentence to begin in the future on the expiration of a prior sentence, it can make no possible difference whether the prior sentence was imposed by the same or by some other court deriving its power from the same authority.").
[¶41] Based on the foregoing authorities, had Mr. Mitchell already been incarcerated pursuant to a separate criminal sentence, there is no question regarding the district court's discretion to structure Mr. Mitchell's sentence as it did. The question presented in this case is whether, in sentencing Mr. Mitchell for interference with custody, the district court had discretion to treat Mr. Mitchell's confinement for civil contempt as it would incarceration under an existing criminal sentence.[12] Absent authority to the contrary, we discern no reasonable justification to treat confinement for civil contempt any different from a pre-existing criminal sentence for purposes of a sentencing court exercising its discretion in deciding whether a criminal sentence should run prior, concurrent or consecutive to a civil contempt commitment.[13] Accordingly, the district court had broad sentencing discretion in this case.
[¶42] We next determine whether the district court abused its discretion in ordering the criminal sentence to run consecutive to and begin at the expiration of the civil commitment order. "An abuse of discretion does not occur unless a court has acted in a manner which exceeds the bounds of reason under the circumstances." Anderson v. State , 2018 WY 6, ¶ 11, 408 P.3d 1148, 1151 (Wyo. 2018) (citations omitted).
*843 [¶43] Considering various opportunities criminal defendants may be afforded once confined in a Department of Corrections facility, e.g., those referenced by Mr. Mitchell including earning good time credit, participating in educational and other programs offered by the Department of Corrections, and consideration for release on parole, a delay in the commencement of a criminal sentence could appear to be outside the bounds of reason. See Cothren II , ¶¶ 30-32, 310 P.3d at 916 (explaining that good time credit cannot be earned until a defendant is confined in a Department of Corrections facility and that the actual length of the sentence served depends on an inmate's conduct as well as the time spent in a correctional facility). However, on careful consideration whether the district court acted within the bounds of reason under the circumstances of this case, we cannot ignore (1) Mr. Mitchell is voluntarily confined under the civil contempt order and holds the keys to the jail in his own pocket; (2) the opportunities Mr. Mitchell references are not intended to become undeserved rewards or means by which Mr. Michell can manipulate or disrespect the court; and, perhaps most important, (3) the district court is in the best position to determine how and when to preserve its contempt powers.
[¶44] As the United States Supreme Court observed:
The summary contempt power. . .although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them.
Yates , 355 U.S. at 70-71, 78 S.Ct. 128 (citation and quotation marks omitted) (emphasis added). From the first year of statehood, we, too, recognized the importance of our courts' contempt power:
The law will not bargain with anybody to let its courts be defied, for a specified term of imprisonment. There are many who would gladly purchase the honors of martyrdom in a popular cause at almost any given price, while others are deterred by a mere show of punishment. Each is detained until he finds himself willing to conform. This is merciful to the submissive, and not too severe upon the refractory. The petitioner, therefore, carried the key of his prison on in his own pocket. He can come out when he will, by making terms with the court that sent him there. But, if he chooses to struggle for a triumph,-if nothing will content him but a clean victory or a clean defeat,-he cannot expect us to aid him.
Ex Parte Bergman , 3 Wyo. 396, 26 P. 914, 918 (Wyo. 1890) (citation omitted).
[¶45] The district court exercised its contempt power to seek compliance with the February 2015 custody order.[14] By commencing Mr. Mitchell's criminal sentence following the expiration of his civil confinement, the sentencing court preserved the coercive impact of the contempt order, rather than undermining or diminishing it. See, e.g. , United States v. Liddy , 510 F.2d 669, 671 (D.C. Cir. 1974) (approving of lower court's order, which delayed execution of defendant's criminal sentence pending his confinement for contempt because such was necessary to give meaning and coercive impact to the court's contempt powers in the interest of protecting the court's integrity.). Such is evidenced by the very reasons Mr. Mitchell urges to immediately commence his criminal sentence - so that he may begin to earn good time credit, take advantage of educational and other opportunities through the Wyoming Department of Corrections, and be considered for the possibility of release on parole. Under the sentence as imposed, these opportunities operate as further incentives for Mr. Mitchell to purge himself of contempt so that he may begin his criminal sentence. Mr. Mitchell should not be permitted to leverage them on *844 appeal to undermine or modify the civil contempt confinement order.[15]
[¶46] The record clearly evidences Mr. Mitchell's repeated choice to disobey the district court's orders in the custody proceedings. Until he purges himself of contempt, his confinement is voluntary. See, e.g. , Ochoa , 819 F.2d at 371 (explaining that time spent in confinement for civil contempt is "a day voluntarily spent in custody in preference to compliance on that day."). We note, however, that while Mr. Mitchell's confinement for civil contempt may continue indefinitely, it cannot last forever. See Thom , 760 F.2d at 740. Mr. Mitchell's civil confinement will end when he purges himself of contempt, or when incarceration for civil contempt loses its coercive purpose.[16]
[¶47] For all these reasons, we conclude the district court permissibly exercised its discretion under the circumstances of this case when it ordered Mr. Mitchell's criminal sentence to run consecutive to and to commence on the expiration of the civil contempt order. The district court did not unlawfully increase Mr. Mitchell's minimum or maximum criminal sentence.
CONCLUSION
[¶48] Mr. Mitchell's criminal sentence is not illegal. The district court held Mr. Mitchell in civil contempt and, thus, his subsequent criminal conviction and sentence did not violate the double jeopardy clause of the United States or Wyoming Constitutions. Mr. Mitchell is not entitled to credit for presentence confinement while he is jailed for civil contempt. Neither the denial of presentence confinement credit nor the tolling of his criminal sentence until after the civil contempt order expires unlawfully increased the term of his criminal sentence.
[¶49] Affirmed.

Mr. Mitchell contacted the Wyoming Department of Family Services (DFS), which advised him that his allegations did not fall within the department's guidelines or definitions of abuse and/or neglect; DFS closed the case.

When the court did not vacate the scheduling conference, Mr. Mitchell emailed his attorney and requested his attorney delay withdrawing from the case until after the hearing. Mr. Mitchell told his attorney to appear at the scheduling conference on his behalf and provide the court with a letter Mr. Mitchell prepared stating his objections to setting a trial date.

Mr. Mitchell claims he never received notice of the trial date because his attorney did not file a change of address with the court even though Mr. Mitchell provided his attorney with his new email and new address in May 2014. However, the record reflects that Mr. Mitchell's attorney emailed the order setting the trial date to Mr. Mitchell's email address they frequently used during the course of the representation, including the discussion of the scheduling conference, and that Mr. Mitchell frequently used the same email address throughout the entirety of the civil and criminal proceedings. We also note that Mr. Mitchell, personally, notified the court of his address changes on two occasions prior to trial.

The record suggests the original bench warrant issued sometime in March 2015. The record does not indicate why the April nunc pro tunc order was necessary.

Dissatisfied with the custody and visitation rulings, Mr. Mitchell filed several petitions seeking custody and/or protection orders in the tribal court. He first filed a petition seeking temporary custody in February 2014. Additional petitions followed after entry of the February 2015 custody order. The tribal court dismissed several of Mr. Mitchell's petitions for lack of jurisdiction due to the Wyoming court proceedings. At other times, the tribal court claimed temporary emergency jurisdiction. The record does not contain the complete filings and dispositions for every filing, however, on May 29, 2017, the tribal court dismissed a petition for custody with prejudice for lack of jurisdiction, and ordered Mr. Mitchell to refrain from further filings. Mr. Mitchell and his mother disobeyed this order and continued to file documents requesting protection orders from the tribal court to establish emergency custody of EP.

Around this time, the President of "Justice for Jesus" Custody Investigations contacted Mr. Mitchell's criminal defense attorney and provided a report the entity prepared on Mr. Mitchell's behalf, which suggested AP previously abused and neglected EP. Copies of the correspondence and report were also provided to the Sheridan County Attorney's office, Mr. Mitchell's civil attorney, the FBI, the Department of Justice, and the United Nation's Office of the High Commissioner for Human Rights.

Between the time the State amended the information and the time the district court accepted the plea agreement, Mr. Mitchell continued his quest for custody modification by filing various letters and motions in the civil proceeding, pro se, and commenced a new custody proceeding in Weston County, Wyoming.

Wyo. Stat. Ann. § 6-2-204 provides in relevant part:
(a) A person is guilty of interference with custody if, having no privilege to do so, he knowingly:
...
(ii) Fails or refuses to return a minor to the person entitled to custody.
...
(d) Interference with custody is a felony punishable by imprisonment for not more than five (5) years if:
...
(ii) The defendant knowingly conceals and harbors the child or refuses to reveal the location of the child to the parent, guardian or lawful custodian.

Several other jurisdictions considering this issue determined that a defendant is not entitled to credit for civil contempt confinement. See, e.g. , People v. Sanders , 115 Ill.App.3d 364, 71 Ill.Dec. 208, 450 N.E.2d 896, 898 (1983) (holding that defendant was not entitled to presentence confinement credit for civil contempt sanction because it would detract from the court's contempt powers); State v. Davenport , 22 Kan.App.2d 683, 920 P.2d 475, 476-77 (1996) (declining to award credit on original sentence for contempt sentence explaining the defendant's "conduct carries with it the consequences of continued incarceration for contempt or the opportunity to begin serving his original sentence."). In accord United States v. Quinn , No. 89 C 5942, 2013 WL 3811651, at *2-3 (N.D. Ill. July 19, 2013). (See also Ochoa v. United States , 819 F.2d 366, 371-72 (2d Cir. 1987) (citing 18 U.S.C. § 3585 ) (explaining that civil contempt confinement is plainly excluded from federal statute governing presentence confinement credit because it allows credit only where the presentence detention resulted from "the offense for which the sentence was imposed," or from "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed.") ); People v. Brents , 115 Ill.App.3d 717, 71 Ill.Dec. 222, 450 N.E.2d 910, 913 (1983) (citing Anglin v. Johnston (7th Cir.1974), 504 F.2d 1165, cert. den. , 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975) ; Application of U.S. Senate Permanent Subcommittee on Investigations (D.C.Cir.1981), 655 F.2d 1232, cert. den. , 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 ) (finding federal courts' rationale persuasive that credit for presentence confinement relating to civil contempt is best left to the sound discretion of the trial court to avoid diminishing a defendant's incentive to comply with the trial court's orders and to avoid rendering the contempt citation meaningless and inoperative.).

Mr. Mitchell did not appeal the district court's order finding him in contempt and the district court denied his motion to quash the commitment order.

To the extent Mr. Mitchell contends his bail was excessive in violation of the Wyoming Constitution and the Wyoming Rules of Criminal Procedure, Mr. Mitchell did not provide a cogent argument as to how the amount of his bail is relevant to his claim of an illegal sentence and, therefore, we decline to consider the issue further. See Bohling v. State , 2017 WY 7, ¶ 45, 388 P.3d 502, 513 (Wyo. 2017) (refusing to consider an issue because a cogent argument was not provided).

Mr. Mitchell was confined for civil contempt prior to being sentenced for his criminal offense. Therefore, this case does not involve an unauthorized split sentence. See, e.g. , Cothren v. State , 2012 WY 102, ¶¶ 7-14, 281 P.3d 352, 354-56 (Wyo. 2012) (Cothern I ) (concluding the defendant's sentence was unlawful where it required him to serve his second Natrona County sentence in two installments separated by a term of probation ordered by another court). This case also does not require us to determine whether commitment for civil contempt may interrupt a prior criminal sentence, though we note that practice has been permitted in some federal jurisdictions. (See, e.g. , United States v. Dien , 598 F.2d 743, 744-45 (2d Cir. 1979) (citations omitted) (explaining that staying of the running of a prior federal sentence for a period of confinement for civil contempt is permissible to avoid frustrating the purpose of statute authorizing confinement of a recalcitrant witness) ); see also Bird , ¶ 13, 356 P.3d at 268 (explaining the rule that "a prisoner is entitled to serve his sentence in one continuous 'stretch,' and that he cannot be required to serve it in installments unless the interruption was due to escape, a parole violation, or some other fault on his part .") (emphasis added).

Other jurisdictions appear to approve of the tolling of criminal sentences until confinement for civil contempt ends. See, e.g. , United States ex rel. Thom v. Jenkins , 760 F.2d 736, 737 (7th Cir. 1985) (upholding lower court's order incarcerating defendant for civil contempt to coerce compliance with court's order and sentencing defendant to sixty days for criminal contempt after compliance with the civil contempt order.); United States v. Harris , 582 F.3d 512, 513 (3d Cir. 2009) (noting lower court's order of contempt tolled commencement of the criminal sentence until civil contempt was lifted.).

See, e.g. , Walker v. Walker , 2013 WY 132, ¶39, 311 P.3d 170 (citing Stephens , ¶¶ 18-19, 239 P.3d at 639, Wyo. Stat. Ann. § 20-2-204(b) (Lexis Nexis 2017) ) ("District courts have both inherent and statutory authority to enforce their orders in domestic and other cases through contempt sanctions.").

In Harris , supra , the Third Circuit Court of Appeals aptly noted: "[W]e simply cannot countenance a situation where a contemnor's insistence on continuing his contumacious conduct inures to his benefit, and we surely do not believe that the Constitution requires such a result." Harris , 582 F.3d at 520.

See, e.g. , King v. Dep't of Soc. & Health Servs. , 110 Wash.2d 793, 756 P.2d 1303, 1309 (1988) (citations omitted) ("Insofar as a civil contempt sanction can only be used to coerce compliance, it logically follows that incarceration for civil contempt can continue only so long as it serves a coercive purpose. At what point incarceration for civil contempt no longer serves a coercive purpose is a matter left to the sound discretion of the trial judge to be decided on a case-by-case basis."); see also Jessica Kornberg, Rethinking Civil Contempt Incarceration , 44 No. 1 Crim. Law Bulletin Art 4 (Winter 2008) ("[C]ivil contempt in these child custody cases has a natural expiration at the child's age of maturity, and is therefore not actually indefinite at all.").