KAUTZ, Justice.
[¶1] The district court in Sheridan County, Wyoming, granted the appellee, Ashley Dawn Preston (Mother), primary custody of the child she shares with the appellant, Steven Jacob Mitchell (Father). Father, a member of the Cheyenne River Sioux Tribe, kept the child on the reservation in South Dakota and refused to relinquish custody to Mother, who is not a member of the tribe. He unsuccessfully sought orders from the district court and the tribal court transferring jurisdiction over the custody matter to the tribal court. In October 2017, Father again moved the district court for an order relinquishing permanent child custody jurisdiction to the tribal court.[1] Father claimed the tribal court acquired jurisdiction over the custody matter by issuing emergency child custody and/or protection orders, and the district court should, therefore, relinquish jurisdiction to make permanent custody orders to the tribal court. The district court granted Mother's motion to strike Father's motion, and Father appealed.
[¶2] We affirm.
ISSUE
[¶3] Father presents the following issue on appeal:
Whether the trial court erred in striking/denying [Father's] Motion to Transfer Venue/Motion to Establish Tribal Jurisdiction where the Northern Cheyenne River Sioux Tribal Court had issued emergency custody and placement orders concerning [the child], the Tribal Court had jurisdiction and the District Court was compelled under the Full Faith and Credit provision of 25 U.S.C. [§] 1911(d) to recognize the *720 Tribal Court's [o]rders or establish Tribal jurisdiction in the matter.
[¶4] Mother did not appear in this appeal.
FACTS
[¶5] This case has a long and arduous course of litigation. We outlined many of the proceedings in Mitchell v. State, 2018 WY 110, ¶¶ 3-16, 426 P.3d 830, 833-35 (Wyo. 2018), where we affirmed Father's conviction and sentence for felony interference with custody. The record in this case is quite sparse, so we will refer to our earlier decision to give an adequate rendition of the proceedings.
[¶6] The parties' child was born in Montana in 2010. The State of Montana established Father's paternity and ordered him to pay child support but did not enter a custody order. The parties moved to Wyoming separately, with Mother living in Sheridan and Father living in Newcastle. They informally agreed that the child would reside with Mother and Father would be entitled to liberal visitation. Mitchell, ¶¶ 3-4, 426 P.3d at 833.
[¶7] During a visit with Father in March 2012, the child became ill because a coin was lodged in her esophagus. The coin had to be surgically removed, and Mother agreed Father could keep the child in his care until she finished her medical treatment. However, Father refused to return the child to Mother after her treatment concluded. He alleged that Mother was abusing and/or neglecting the child, and reported his suspicions, apparently prompted by the coin incident, to the Department of Family Services (DFS). DFS determined, on April 13, 2012, that Father's allegation did not "fall within the Department's guidelines ... or definitions of abuse and/or neglect," and closed the case. Despite DFS's conclusion, Father refused to return the child to Mother or to allow any contact between Mother and the child. Id., ¶ 4, 426 P.3d at 833.
[¶8] On July 1, 2013, Mother filed a petition in the Sheridan County district court to establish custody and visitation. The parties agreed to a temporary custody and visitation order, giving Father temporary custody of the child subject to Mother's visitation. Because of the child's young age and the amount of time she had been separated from Mother, the visitation schedule was graduated, starting with visitation supervised through the Court Appointed Special Advocate Program (CASA). Father, however, refused to comply with the visitation order, and, over time, Mother filed two motions for orders to show cause. The district court found Father in contempt of court each time and ordered him to comply with the visitation order and to pay Mother's attorney fees and costs. Mitchell, ¶¶ 5-7, 426 P.3d at 833-34.
[¶9] In 2014, Father moved with the child onto the Cheyenne River Indian Reservation in South Dakota. On February 25, 2014, Father filed a petition for temporary full custody of the child with the Children's Court of the Cheyenne River Sioux Tribal Court. He incorrectly alleged in his petition that legal custody of the child had not been established in the district court. After a hearing on April 22, 2014, the tribal court dismissed Father's petition for lack of jurisdiction because the custody action was pending in the Sheridan County district court and Mother was not a tribal member. Id., ¶ 15 n.5, 426 P.3d at 835 n.5.
[¶10] The district court scheduled a trial on Mother's petition to establish custody and visitation for February 6, 2015. Father's attorney provided him with the order setting the trial date by e-mail and mail. Father did not appear for the trial, the district court found him in default, and the trial proceeded as scheduled. Id., ¶¶ 8-9, 426 P.3d at 834.
[¶11] On February 23, 2015, the district court entered an order awarding primary custody of the child to Mother. The district court issued a warrant for Father's arrest for failing to comply with its orders in the custody case. In addition, the State charged him with felony interference with custody, in violation of Wyo. Stat. Ann. § 6-2-204(a)(ii), (d) and (e) (LexisNexis 2017). Mitchell, ¶¶ 9-10, 426 P.3d at 834. Father was arrested in October 2016, but he still did not return the child to Mother. Instead, the child remained on the reservation with her paternal grandmother (Grandmother). Id., ¶ 12, 426 P.3d at 835.
*721 [¶12] Father continued his efforts to have the Wyoming district court transfer jurisdiction over the custody matter to the tribal court. Id., ¶ 12, 426 P.3d at 834-35. Father also filed motions with the tribal court, and he was successful in having the tribal court occasionally enter emergency custody and/or protection orders. Id. , ¶ 15 n.5, 426 P.3d at 835 n.5. He was not successful, however, in obtaining any tribal court order which asserted jurisdiction over the permanent custody issue between Mother and Father.
[¶13] On October 26, 2017, Father filed the motion which is at issue in this case. It was a combined motion entitled "Motion for Change of Venue/Motion to Establish Tribal Jurisdiction." The district court granted Mother's motion to strike Father's combined motion on April 23, 2018. It ruled that Father had received "ample due process," including notice and the opportunity to be heard with respect to the initial custody determination. The district court also ruled that it had "exclusive, continuing original jurisdiction to make a custody determination in this matter." Father filed a timely notice of appeal.
STANDARD OF REVIEW
[¶14] This appeal raises issues of the district court's subject matter jurisdiction and the proper application of the relevant statutes. These are questions of law subject to de novo review. See, e.g. , Harmon v. Star Valley Med. Center, 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014) (whether a court has subject matter jurisdiction is a question of law reviewed de novo. ); Jensen v. Milatzo-Jensen, 2013 WY 27, ¶ 18, 297 P.3d 768, 774 (Wyo. 2013) (the application of a statute is a question of law reviewed de novo).
DISCUSSION
[¶15] Father claims that the district court erred by striking his Motion to Establish Jurisdiction in the Tribal Court.[2] He argues the tribal court acquired jurisdiction to determine the child's permanent custody when it issued emergency orders, and those orders are entitled to full faith and credit under the Indian Child Welfare Act, 25 U.S.C. §§ 1901, et seq. (ICWA). The four orders that he claims establish tribal court jurisdiction are: 1) a March 10, 2016 order recognizing the State of Wyoming had primary jurisdiction over the child's custody, but stating the tribal court could exercise temporary emergency jurisdiction over the child pursuant to the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A(c)(2)(C) ; 2) a June 20, 2016 restraining order prohibiting Mother from contacting Father, going to his residence, or harassing him; 3) a November 3, 2016 order granting Father and Grandmother temporary custody under the PKPA so they could seek counseling for the child; and 4) a July 31, 2017 order dismissing Grandmother's motion for custody of the child and for a protection order to prevent Mother from contacting the child. Father also claims the district court should have given full faith and credit to a notice from the Tribal Chairman placing the child under the permanent protection of the tribe, as a ward of the tribe, in the care of Grandmother. The Tribal Chairman directed all tribal departments and agencies to protect the sanctity of Lakota families until the custody issue was resolved in tribal court.
[¶16] Before we address Father's arguments, we are compelled to note that Father presented an incomplete and inaccurate recitation of the proceedings from the tribal court. This is particularly troubling because Mother did not make an appearance in this appeal and, therefore, did not designate the parts of the record that would support an affirmance of the district court's decision. We are aware, from the record we reviewed in Mitchell v. State, supra, that the tribal court issued an order on May 29, 2017, dismissing the custody case with prejudice for lack of jurisdiction and directing Father not to file any additional petitions with the tribal court "unless there is a substantial change of circumstances." The May 29, 2017 order has the same case number as the November 3, 2016 temporary custody order.
*722 [¶17] We described the tribal court proceedings, including the May 29, 2017 order, in Mitchell, ¶ 15 n.5, 426 P.3d at 835 n.5 :
Dissatisfied with the custody and visitation rulings, [Father] filed several petitions seeking custody and/or protection orders in the tribal court. He first filed a petition seeking temporary custody in February 2014. Additional petitions followed after entry of the February 2015 custody order. The tribal court dismissed several of [Father's] petitions for lack of jurisdiction due to the Wyoming court proceedings. At other times, the tribal court claimed temporary emergency jurisdiction. The record does not contain the complete filings and dispositions for every filing, however, on May 29, 2017, the tribal court dismissed a petition for custody with prejudice for lack of jurisdiction, and ordered [Father] to refrain from further filings. [Father] and [Grandmother] disobeyed this order and continued to file documents requesting protection orders from the tribal court to establish emergency custody of [the child].
[¶18] Father's argument in this appeal entirely omits the May 29, 2017 order, apparently because it directly contradicts his assertion that the tribal court acquired jurisdiction over the custody matter through its emergency orders. The May 29, 2017 order was comprehensive, examining the ICWA; the PKPA; the Uniform Child Custody Jurisdiction and Enforcement Act (codified in Wyoming at Wyo. Stat. Ann. §§ 20-5-201, et seq. ) (UCCJEA); the Cheyenne River Children's Code; and the Cheyenne River Law and Order Code. The tribal court concluded that the Sheridan County district court had continuing jurisdiction over the child's custody and the tribal court did not have jurisdiction. Other parts of the record lead us to believe that Father appealed the May 29, 2017 order to the tribal court of appeals. Father has not informed us that the tribal court of appeals has reversed the May 29, 2017 order, so we will keep that order in mind as we address Father's issues on appeal.
[¶19] Father maintains that, under the ICWA, 25 U.S.C. § 1911(a) and (d), the tribal court acquired jurisdiction over the custody matter by issuing emergency orders and its orders are entitled to full faith and credit:
(a) Exclusive jurisdiction
An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
....
(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes
The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.
[¶20] As the language of § 1911 makes clear, the ICWA governs "child custody proceedings." That term is defined at 25 U.S.C. § 1903(1) :
(1) "child custody proceeding" shall mean and include-
(i) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
(ii) "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;
(iii) "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution *723 after the termination of parental rights, but prior to or in lieu of adoptive placement; and
(iv) "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.
Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents.
(emphasis added).
[¶21] Applying the divorce exemption highlighted above, the tribal court ruled in its May 29, 2017 order that the ICWA did not apply to this case. The tribal court's decision is consistent with many cases which hold the ICWA does not apply to custody disputes between parents in divorce actions. See, e.g. , Asa'carsarmiut Tribal Council v. Wheeler, 337 P.3d 1182, 1189 (Alaska 2014) ; Cox v. Cox, 613 N.W.2d 516, 519 (N.D. 2000) ; DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 514 (8th Cir. 1989). Additionally, even though the statutory exemption uses the term "divorce," it applies to custody disputes between non-married parents. See, e.g. , John v. Baker, 982 P.2d 738, 747 (Alaska 1999). In Application of DeFender, 435 N.W.2d 717, 721-22 (S.D. 1989), the South Dakota Supreme Court quoted the U.S. Department of the Interior, Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584, 67587 B.3(b) (1979), as follows: "Child custody disputes arising in the context of divorce or separation proceedings or similar domestic relations proceedings are not covered by the Act so long as custody is awarded to one of the parents." (emphasis added). See also , Cherino v. Cherino, 143 N.M. 452, 176 P.3d 1184, 1186 (Ct. App. 2007).
[¶22] The cases Father cites to support his argument that the tribal court acquired jurisdiction to make permanent custody decisions regarding the child do not hold that the ICWA gives tribal courts jurisdiction over private custody disputes between parents. To the contrary, they demonstrate that the ICWA only applies to cases which meet the statutory definition of child custody proceedings, such as adoptions of Indian children or proceedings to terminate parental rights. See Comanche Indian Tribe of Oklahoma v. Hovis, 53 F.3d 298 (10th Cir. 1995) (termination of parental rights); Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (adoption); Matter of Adoption of Halloway, 732 P.2d 962 (Utah 1986) (adoption); Navajo Nation v. District Court for Utah County, 831 F.2d 929 (10th Cir. 1987) (adoption); Roman-Nose v. New Mexico Dep't of Human Servs., 967 F.2d 435 (10th Cir. 1992) (termination of parental rights); Native Village of Venetie I.R.A. Council v. State of Alaska, 944 F.2d 548 (9th Cir. 1991) (adoption).[3] Father does not cite any authority indicating that the exemption for parental custody disputes should not apply in this case. We, therefore, conclude the ICWA does not apply to the private custody dispute between Mother and Father.
[¶23] Even if we assume, for the sake of argument, that the ICWA and the full faith and credit provision in § 1911(d) apply to this case, we would still reject Father's argument that the tribal court's emergency orders gave it jurisdiction to make permanent custody decisions regarding the child. As we explained above, Father references four orders in his argument that the tribal court acquired jurisdiction over the child custody matter-the March 10, 2016 order; the June 20, 2016 order; the November 3, 2016 order; and the July 31, 2017 order.
[¶24] Two of the four orders (the June 20, 2016 order and the July 31, 2017 order) do not, in any way, support Father's argument that the tribal court acquired jurisdiction to make permanent custody decisions regarding the child by issuing emergency orders. The June 20, 2016 tribal court order *724 was a restraining order prohibiting Mother from contacting or harassing Father. It did not mention the child or the child custody matter at all.
[¶25] The July 31, 2017 order dismissed Grandmother's request for custody of the child and/or a protection order to prevent Mother from contacting the child. It referenced an earlier order "dismissing the custody issue" because the tribal court lacked jurisdiction, which was then on appeal to the tribal court of appeals (presumably the May 29, 2017 order). The tribal court said that "insofar as the Petition seeks custody, this Court lacks jurisdiction to hear such matters until the Court of Appeals rules on the Appeal already filed[.]" Given the July 31, 2017 order expressly denied Grandmother's request for custody, it does not support Father's argument that the tribal court acquired jurisdiction over the child custody matter.
[¶26] In the other two orders (the March 10, 2016 and the November 3, 2016 orders), the tribal court asserted temporary emergency jurisdiction over the child pursuant to the PKPA, 28 U.S.C. § 1738A(c)(2)(C). Father claims the Wyoming district court was required to give full faith and credit, under ICWA § 1911(d), to the tribal court's emergency orders and those orders demonstrate the tribal court acquired jurisdiction to make permanent custody decisions.
[¶27] The PKPA, 28 U.S.C. § 1738A, states in relevant part:
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify ... any custody determination or visitation determination made consistently with the provisions of this section by a court of another State.
....
(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if-
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met: ...
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse[.]
[¶28] According to the tribal court, the "Cheyenne River Sioux Tribal Court of Appeals has ruled that the Cheyenne River Sioux Tribal Courts are 'state courts' for purposes of the [PKPA] and are bound to recognize state court custody orders and are entitled to be recognized as 'state courts' for purposes of recognition and enforcement of its child custody orders." Under the PKPA, the state that initially determines child custody generally retains jurisdiction to modify its custody order. Marquiss v. Marquiss, 837 P.2d 25, 37 (Wyo. 1992). We discussed the purposes of the PKPA and its state counterpart, the Uniform Child Custody Jurisdiction Act (UCCJA) (the predecessor to the UCCJEA), in State ex rel. Griffin v. Dist. Ct. of Fifth Dist., 831 P.2d 233, 237 (Wyo. 1992) :
A fundamental purpose of both the UCCJA and the PKPA is to avoid conflict and promote cooperation. Other underlying purposes include the elimination of forum shopping, to enable courts to act in the best interests of children, and to deter interstate abductions and other unilateral removals of children undertaken for purposes of obtaining custody.
(citations omitted).
[¶29] Although the initial decree state retains continuing jurisdiction to make permanent custody decisions, another state may assert jurisdiction over a child in emergency situations pursuant to § 1738A(c)(2)(C). Emergency jurisdiction under the PKPA is temporary and should continue "only so long as the emergency exists or until a court that has jurisdiction to enter or modify a permanent custody award is apprised of the situation and accepts responsibility to ensure that the child is protected." Sheila L. on Behalf of Ronald M.M. v. Ronald P.M., 195 W.Va. 210, 465 S.E.2d 210, 223 (1995) (discussing PKPA). See also, *725 NMC v. JLW, 2004 WY 56, ¶ 14, 90 P.3d 93, 97 (Wyo. 2004) (discussing similar temporary emergency jurisdiction under UCCJA).
[¶30] A court's assertion of temporary emergency jurisdiction under the PKPA does not give it authority to modify a permanent custody decision. Moore v. Richardson, 332 Ark. 255, 964 S.W.2d 377, 383 (1998). In Sheila L., 465 S.E.2d at 222, the West Virginia court explained:
To hold [that emergency jurisdiction under the PKPA gave the court authority to make a permanent custody order] would be a license for every unscrupulous would-be custodial parent in the country to take his or her children and make false allegations of emergency situations in states where favorable custody decisions may result. See Ex parte J.R.W. (Re: S.C. v. J.R.W.), 667 So.2d 74, 81 (Ala.1994), as modified; rev'd on other grounds, 667 So.2d 88 (Ala.1995) ("[a]llowing a state court to modify 'permanently' a prior custody determination of another court solely on the basis of the 'emergency' provision of § 1738A(c)(2)(C) would thwart the very purposes for which the PKPA was enacted"[).]
See also , SC v. Dep't of Family Servs. (In re NC and AM), 2013 WY 2, ¶ 43, 294 P.3d 866, 876 (Wyo. 2013) (holding that similar emergency jurisdiction provision of the UCCJEA did not "include the authority to make permanent custody determinations").
[¶31] The tribal court appropriately recognized the limitations on its authority under the PKPA. In the March 10, 2016 order, the tribal court stated that the Wyoming district court retained primary jurisdiction over the custody matter. The tribal court's May 29, 2017 order, which bore the same case number as the November 3, 2016 temporary order, confirmed that the tribal court was bound to recognize the Wyoming custody order. The tribal court also stated that the PKPA prohibited it from modifying the permanent custody order unless the Wyoming court lost or relinquished jurisdiction. Therefore, the tribal court's assertion of emergency jurisdiction in its March 10, 2016 and November 3, 2016 orders did not affect the February 2015 Wyoming custody order or the Wyoming district court's continuing jurisdiction to make permanent custody determinations.
[¶32] In a final argument based upon the ICWA, Father claims that the tribal court acquired jurisdiction over the custody matter because the child is a ward of the tribal court. His argument is based upon the part of § 1911(a) that states: "Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child." Father's argument that the child is a ward of the tribal court is apparently based upon the emergency orders discussed above and a November 29, 2017 notice from the Tribal Chairman stating that he was placing the child under permanent protection of the tribe, as a ward of the tribe, in the care of Grandmother. Father incorrectly suggests that the Tribal Chairman's notice is an order from the tribal court.
[¶33] Father does not direct us to any tribal court order making the child its ward. He also does not address the ramifications of the Tribal Chairman, rather than the tribal court, declaring the child a ward. We generally refuse to consider arguments not supported by cogent argument or citation to pertinent authority. Whitham v. Feller, 2018 WY 43, ¶ 25, 415 P.3d 1264, 1270 (Wyo. 2018) ; Hodson v. Sturgeon, 2017 WY 150, ¶ 6, 406 P.3d 1264, 1265 (Wyo. 2017). Furthermore, the Tribal Chairman deferred to the tribal court when he directed all tribal departments and agencies to protect the sanctity of the Lakota family "until this issue is resolved in Tribal court." Thus, even if the ICWA applied in this case (which it does not), Father has not demonstrated that the tribal court made the child a ward so as to affect the Wyoming district court's continuing jurisdiction to determine the child's permanent custody.
[¶34] The district court properly concluded that it retained exclusive continuing jurisdiction to make permanent custody determinations regarding the child. It did not err by striking (or denying) Father's motion to establish *726 tribal court jurisdiction over the custody matter.
[¶35] Affirmed.

Father combined this motion with a request to change venue to Weston County. In this appeal, he does not challenge the district court's order on his motion for a change of venue.

The use of the term "strike" seems incorrect in the context of this case. The district court did not strike Father's motion and refuse to consider it. It considered the matter and rejected Father's motion, which is more akin to a denial of the motion.

Father also cites Walker v. Rushing, 898 F.2d 672 (8th Cir. 1990) as authority for his argument that the tribal court had concurrent jurisdiction over the child custody matter. That case considered tribal jurisdiction to punish members for violations of tribal law. It does not address child custody at all.